No. 2--05--1090

---

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 00--CF--1078 |
| PATRICIA C. WAKENIGHT, | ) ) ) | Honorable J. Edward Prochaska, |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

JUSTICE CALLUM delivered the opinion of the court:

Following a bench trial, defendant, Patricia C. Wakenight, was convicted of possession of a controlled substance with intent to deliver within 1,000 feet of a church (720 ILCS 570/407(b)(1) (West 2000)). Defendant did not attend the second day of the trial and the sentencing hearing, after she left the courtroom to use the restroom and never returned. Defendant appeals, contending that (1) this court should exercise its discretion to hear her appeal despite her "probable" status as a fugitive; (2) although she initially received proper admonishments that she could be tried in absentia, the court's later statements and actions led her to believe that that was no longer a possibility; and alternatively (3) that a new sentencing hearing is required because notice of the date of the hearing was not mailed to her last known address. For the following reasons, we elect to hear the appeal, but hold that defendant is not entitled to relief on the merits. Therefore, we affirm.

On April 27, 2000, police executed a search warrant for 1728 7th Street in Rockford. They saw defendant and Joseph Cooper sitting on the front porch. Detective Robert Veruchi searched Cooper and found car keys. A car was parked in front of the building. When Veruchi asked to whom the car belonged, defendant volunteered that it was her mother's. Defendant consented to a search of the car, which revealed a green bag containing packets of cocaine. Police also found a piece of mail dated April 25, 2000, and addressed to defendant at 420 Ashley Court in Rockford.

On April 28, 2000, the public defender was appointed to represent defendant. However, the public defender told the court that her office would have to withdraw due to a conflict of interest. At the next hearing, on May 25, 2000, the trial court admonished defendant as follows:

"Ms. Wakenight, it is my duty to advise you that if you fail to appear at any time that the case is set for trial, the trial can go ahead without you. And if you were found guilty, you could also be sentenced without being present. Do you understand?"

Defendant responded that she understood.

On August 28, 2000, the trial court allowed the public defender to withdraw and appointed Frank Martinez as counsel. However, Martinez soon withdrew from the case due to his own conflict of interest. Mark Danielson was then appointed as counsel, but he withdrew on September 14, 2000, because he was moving out of state. On September 21, 2000, David Caulk was appointed conflict counsel. He soon withdrew because his conflict contract expired. On January 18, 2001, the court appointed Gregory Clark as defendant's counsel.

Problems soon arose between defendant and Clark and, on August 16, 2002, she filed a pro se motion requesting appointment of a different attorney. The trial court initially denied the request but, after Clark received a letter from the Attorney Registration and Disciplinary Commission

accompanied by defendant's complaint against Clark, the court allowed Clark to withdraw. The court appointed Patrick Braun as new counsel.

On August 29, 2003, Braun announced that the parties had reached a plea agreement, under which defendant would receive a four-year prison sentence. In anticipation of the plea agreement, defendant executed a jury waiver. The matter was continued to March 1, 2004, when defendant informed the court that she had decided not to accept the State's offer.

The cause was continued to June 18, 2004, for a bench trial. Defendant failed to appear on the trial date, and the court issued a no-bond warrant. Defendant was arrested on November 30, 2004. At that time, she learned that Braun no longer represented her because he had taken a position with the Boone County State's Attorney's office. Jeffrey Kline was appointed in Braun's place.

Defendant told the judge that she was in jail and pregnant. She was scheduled to deliver her baby by cesarean section shortly thereafter. The court asked defendant why she had failed to appear for trial on June 18, 2004, and she explained that she had confused the trial date with another date. When she received notice of the bench warrant, she became scared because she did not want to deliver her baby in jail. The trial court set defendant's bond at $50,000.

Kline moved to reduce defendant's bond, citing her "high-risk" pregnancy and attendant medical needs. At the hearing on the motion, the court noted that defendant goes "through attorneys like most people change their underwear," and labeled the delays in the case "horrendous." However, the court granted defendant's motion to reduce her bond to $5,000, warning her that the case would go to trial as soon as Kline was ready.

The court also stated that it would set a status date for January 27, 2005. The court noted that it would then clear a date and "this case will go to trial no matter what, absolutely no matter what." The court then stated:

"If you fail to appear for the trial date, I'll set a no bond warrant and I'll leave it no bond and then that way I can ensure you will sit, and the case will go to trial as soon as you're picked up on the warrant. I cannot stress enough this case is going to be resolved. It's ridiculous."

The court ordered that, as a condition of her bond, defendant remain at her current address. Kline told the court that defendant's address was 1015 Center Street, South Beloit. Later that day, defendant signed a bond receipt that contained the following admonishment:

"I understand further that if at any time prior to the disposition of the charge(s) I escape or am released on the bond and fail to appear in court when required by the court, the result of my failure to appear will be as follows: I thereby waive my right to confront the witnesses against me; the trial can proceed in my absence; I forfeit the security money posted; judgement will be entered against me for the full amount of this bond, plus costs; a warrant may be issued, in which event additional bond may be required."

The court set a trial date of April 5, 2005. On that date, defendant complained that she had not met with Kline to discuss defense strategy. Kline told the court that, although he thought he had met with defendant, he could have been wrong. He asked for a continuance. The court continued the case to May 20, 2005, and instructed Kline and defendant to meet before that date.

On May 20, 2005, Kline informed the court that he was not ready for trial and had "not ha[d] the opportunity to talk to Miss Wakenight with regard to her position." The court asked Kline if he

had met with defendant since April 5, 2005. Kline responded, "I don't recall. I know I have spoke [sic] to her on the phone."

The court noted that the trial could not be completed that day in any event. The court stated that it would allow three State witnesses who were present to testify, then it would continue the trial to another date, which would give defendant and Kline a chance to meet. After the three witnesses testified, the court continued the case to July 22, 2005. The court instructed Kline to meet with defendant and to have subpoenas issued for witnesses in the meantime.

When the trial resumed on July 22, 2005, Kline told the court that he had met with defendant, but was "having a problem with a witness." Kline knew where the witness worked and was going to try to get him to court. He acknowledged that he had not subpoenaed the witness because he expected him to appear voluntarily.

During these proceedings, it occurred to the court that defendant was taking an inordinately long time to return from the restroom. After the bailiff unsuccessfully searched for defendant, the following occurred:

"THE COURT: If she left, there's going to be one very unhappy Judge.

(Whereupon Mr. Kline entered the courtroom.)

THE COURT: Come on. Don't tell me she's gone. How did you leave it with her? I understand there were other people with her, too?

MR. KLINE: Yes, her mom was with her. I spoke to [the prosecutor]. She asked me to approach him about the possibility of probation. I went in, I explained [the prosecutor's] position and the state's position with regard to why they don't think probation was appropriate.

-5-

THE COURT: I don't want to get into the substance of the plea negotiation. I want to know why she's not inside my courtroom.

Did she tell you she was going to use the rest room, she told you that?

MR. KLINE: Yes, she said, 'Do you think I can use the rest room one more time?' "

The prosecutor urged the court to proceed with the trial. The court agreed that the case was appropriate for trial in absentia, and the State completed its case. The defense rested without presenting any witnesses. The court found defendant guilty and continued the case to September 23, 2005, for sentencing.

On September 23, 2005, the State informed the court that it had neglected to send defendant a notice by certified mail informing her of the sentencing date. The court continued the case to November 1, 2005. On that date, the State informed the court that it had sent notice by certified mail to defendant at 420 Ashley Court, Rockford. The court denied defendant's posttrial motion and sentenced her to 10 years' imprisonment. Kline filed a notice of appeal on defendant's behalf the same day.

Defendant first contends that we should exercise our discretion to hear her appeal. In People v. Partee, 125 Ill. 2d 24, 37 (1988), the supreme court stated that an appellate court has the discretionary power to refuse to hear a fugitive's appeal unless and until the fugitive returns to the jurisdiction. Some later appellate court cases have dismissed the appeals of fugitive defendants. See People v. Wicklund, 363 Ill. App. 3d 1045 (2006); People v. Taylor, 247 Ill. App. 3d 321 (1993).

We decline to dismiss the appeal here because the only substantive issues defendant raises are whether she was properly admonished about the possibility of a trial in absentia and whether she was entitled to a separate notice of the sentencing hearing. If defendant were not properly admonished

about the possibility of a trial in absentia or did not receive a required notice, it would be unfair to dismiss her appeal on the ground that she failed to attend the trial. Thus, the substantive issues are intertwined with the issue of whether we should hear the appeal in the first place. Accordingly, we decline to dismiss the appeal and will reach the merits.

In doing so, we note our disagreement with defendant's suggestion that her decision to absent herself from the trial can be blamed on her appointed attorney. Defendant cites her repeated complaints to the trial court that Kline was unable to meet with her and discuss her defense and argues that "the record strongly suggests that the defendant left her trial because her appointed attorney did not adequately consult with her regarding potential witnesses and viable defenses to the charge." We disagree.

Initially, we note that this argument is pure speculation. The record shows that Kline met with defendant at least once in person and spoke with her once by telephone. Moreover, this case was not extraordinarily complex. The evidence showed that police found cocaine in a car that defendant admitted belonged to her mother. If defendant believed that she was not the person the police saw on the porch of 1728 7th Street, that the cocaine was placed in the car without her knowledge, or that the substance the police found was not in fact cocaine, this information could have easily been conveyed during a telephone conversation and a face-to-face meeting. Of course, by being absent, defendant is unable to explain what additional information she wished to convey to Kline but was unable to.

Moreover, even if the factual assumptions underlying this argument are true, they provide no excuse for defendant's absence. Section 115--4.1(a) of the Code of Criminal Procedure of 1963 (the Code) specifies the circumstances under which an absent defendant may be tried in absentia. 725

ILCS 5/115--4.1(a) (West 2004). The provision does not contain an exception for a defendant whose attorney has not met with her as often as she would prefer. If defendant truly believed that Kline was not adequately representing her, procedures were available to address that situation. Defendant well knew this, because she succeeded in having one of her former attorneys removed from the case. Finally, if defendant was truly concerned about Kline's ability to represent her, this would have provided all the more incentive for her to attend the trial and assist him, rather than simply vanishing, leaving him to defend an absent client.

While we need not resolve the question why defendant left the trial, we note the State's observation that she did so, according to Kline, immediately after the prosecutor rejected her request for a plea-bargained sentence of probation. This appears to be a more likely explanation for her sudden absence from court than some vague, unsupported concern about the quality of her attorney's representation.

On the merits, defendant's first substantive contention is that she was not properly admonished about the possibility of a trial in absentia. She concedes that she initially received the proper admonishment, but contends that the court's later remarks that if she failed to appear, it would issue a no-bond warrant "and the case will go to trial as soon as you're picked up on the warrant" "superceded and negated" the first, proper admonishment.

Section 113--4(e) of the Code provides that if a defendant pleads not guilty, the court shall advise him or her "that if he escapes from custody or is released on bond and fails to appear in court when required by the court that his failure to appear would constitute a waiver of his right to confront the witnesses against him and trial could proceed in his absence." 725 ILCS 5/113--4(e) (West 2004). Again, defendant concedes that the trial court properly admonished her early on in the case.

However, she contends that the combination of circumstances left her with the impression that a trial would not commence until she was actually arrested on a warrant. She notes that approximately five years had passed since she received the proper admonishment. Since then, she had missed one earlier trial date, but a trial in absentia did not occur at that time. Instead, the court continued the case and issued a bench warrant. When defendant was arrested on the warrant, the court then reduced her bond, admonishing her that if she again failed to appear, "I'll set a no bond warrant and I'll leave it no bond and then that way I can ensure you will sit, and the case will go to trial as soon as you're picked up on the warrant." Defendant contends that she was thus left with the impression that if she again missed court, the case would not go forward until she was arrested on a warrant and forcibly brought to court.

Initially, we note that defendant cites no authority for the proposition that a proper section 113--4(e) admonishment can be "negated" by a trial court's later remarks in another context. Moreover, the record here does not show that the earlier admonishment was in fact negated. The court never explicitly said that a trial in absentia was no longer a possibility. The quoted remarks came in the context of the court expressing its frustration with the delays in the case and defendant's previous failure to appear for trial. The quoted statement was immediately preceded by the court's remark that "I'm going to clear a morning or an afternoon, and this case will go to trial no matter what, absolutely no matter what." Finally, as the State points out, later that same day defendant signed a bond receipt that contained a written version of the trial in absentia warning (and after being released on bond previously, she had signed a receipt containing the same warning). Considering all the circumstances, including the court's extreme frustration with the delays in the case, and its concomitant threat that the case would proceed "no matter what," defendant cannot reasonably

contend that she took the court's remarks to mean that a trial would not proceed until she was arrested on a bench warrant and physically brought to court.

People v. Condon, 272 Ill. App. 3d 437 (1995), which defendant cites, provides her with no support. There, at his arraignment, the defendant received a written admonition that if he failed to appear he could be tried and sentenced in his absence. Condon, 272 Ill. App. 3d at 441. At a later proceeding, the defendant was orally warned that " 'the proceedings [could] go forward in his absence' " if he failed to appear " 'on whatever court date is set.' " Condon, 272 Ill. App. 3d at 442. We held that substantial, and not perfect, compliance with section 113--4(e) was required, and that the combination of oral and written admonishments sufficiently conveyed to the defendant that if he did not appear for trial, the trial could go forward without him. Condon, 272 Ill. App. 3d at 442. We fail to see how Condon helps defendant here, where she received more complete and specific oral admonishments than those given in Condon and twice received a written admonition that her failure to appear could result in a trial in absentia.

Defendant also contends that she must receive a new sentencing hearing because she was not notified of the sentencing date by certified mail at her last known address. Defendant points out that, although the clerk sent her a certified letter containing the date of the sentencing hearing, the letter was sent to her former address in Rockford, rather than her new address in South Beloit, which was part of the record. The State responds that the trial and sentencing hearing are parts of the same proceeding and, because defendant knew of the trial date, a separate notice was not necessary.

Once again, we note that defendant cites no authority specifically holding that separate notice of the date of a sentencing hearing is required when the defendant was present when the trial date was set. Section 115--4.1(a) of the Code provides that if a defendant does not appear at the hearing on

which the trial date is set, the court can conduct the trial in the defendant's absence if the clerk notifies the defendant of the trial date by certified mail at his or her last known address. 725 ILCS 5/115--4.1(a) (West 2004). As the State points out, the statute does not differentiate between trials and sentencing hearings. Undoubtedly, this is because the trial and sentencing hearing are considered parts of a single proceeding. Indeed, courts have noted that there can be no final judgment in a criminal case until a sentence is imposed. People v. Harrison, 372 Ill. App. 3d 153, 155 (2007). In People v. Smith, 202 Ill. App. 3d 606, 608 (1990), the court held that a defendant need not be specifically admonished that he could be sentenced in his absence, because a "sentencing hearing is a part of the trial." In People v. Thomas, 216 Ill. App. 3d 405 (1991), the defendant appeared for trial but not for sentencing and was sentenced in absentia. While agreeing with Smith that "an admonition concerning trial may include any proceedings held in conjunction with the charge," the court vacated the defendant's sentence because he was never admonished about the possibility of trial in absentia. Thomas, 216 Ill. App. 3d at 409.

These cases support the conclusion that the trial and sentencing hearing are parts of the same proceeding. Accordingly, where defendant was in court when the court set the trial date (indeed, she came to court on the trial date before leaving), separate notice of the sentencing hearing was not required.

In her reply brief, defendant appears to contend that the State is judicially estopped from arguing that notice of the sentencing hearing is not required, because the State attempted to notify defendant, albeit at the wrong address. However, judicial estoppel requires that a party take factually inconsistent positions. People v. Jones, 223 Ill. 2d 569, 598 (2006). Here, the State's positions are

at most legally inconsistent. Thus, the State is not precluded from arguing that the statute's plain language does not require notice.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

GROMETER, P.J., and McLAREN, J., concur.