Docket No. 89057–Agenda 10–November 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOSEPH MAGGETTE, Appellee.

Opinion filed March 29, 2001.

JUSTICE FREEMAN delivered the opinion of the court:

Following a bench trial in the circuit court of Adams County, defendant, Joseph Maggette, was ultimately convicted of two counts of criminal sexual assault and one count of residential burglary. 720 ILCS 5/12–13(a)(2), 19–3 (West 1998). He was sentenced to prison terms totaling 30 years.

The appellate court reversed defendant’s criminal sexual assault convictions and affirmed his residential burglary conviction. 311 Ill. App. 3d 388. We allowed the State’s petition for leave to appeal (177 Ill. 2d R. 315(a)); defendant cross-appeals. We now affirm the appellate court, but modify defendant’s sentence .

BACKGROUND

The State’s evidence at trial was essentially as follows. In late May or early June 1998, defendant moved into the Hotel Elkton (Elkton) in Quincy, Illinois. The victim, G.J.S., was employed as a housekeeper there. She had seen defendant prior to his moving into the Elkton, when he worked at a recycling center in Quincy. There, he would wave or speak to her or her husband.

While defendant resided at the Elkton, he followed the victim while she worked, asking questions about her. During these conversations, defendant repeatedly stated that “he wanted to be more than friends” with her; that “he wanted to have an affair” with her; and that he would like to perform cunnilingus on her. The victim always and repeatedly responded that she could only offer defendant friendship. She told defendant that she was married, intended to be faithful to her husband, and did not want to have an affair with him.

The victim had a friend, L.F., who lived at the Elkton. L.F. witnessed some of the above-stated conversations between the victim and defendant. L.F. told defendant more than once to stay away from the victim.

On June 3, 1998, L.F. and the victim had planned to celebrate the twenty-first birthday of L.F.’s son. They were going to have a party that afternoon at L.F.’s apartment, and would take him out that evening. Prior to the victim’s arrival, L.F.’s son appeared briefly and then left, telling L.F. that he would soon return. The victim arrived. Defendant subsequently came by, looking for the victim; L.F. allowed him in her apartment. L.F.’s son never returned. L.F. and the victim accordingly made plans to go out themselves that evening. Defendant was present when L.F. and the victim planned their evening. They did not invite defendant.

The victim went to her home and, at approximately 7:30 p.m., returned to L.F.’s apartment. The victim brought her dinner with her, but she did not eat it. The victim, L.F., and two of their friends went to a tavern. L.F. saw defendant sitting at the bar with someone; he did not say anything to the victim and her friends. After several drinks, the victim and her friends left that tavern and went to a second one. None of them saw defendant. They drank there for approximately one to two hours. According to L.F., she was not intoxicated, but the victim was.

They drove to a tavern called Port’s Place, located two buildings away from the Elkton. Before entering, the victim decided to go to L.F.’s apartment, eat the meal that she brought there, and then rejoin her friends. L.F. gave the victim the key to her apartment. L.F. and her friends entered the tavern, and the victim went to L.F.’s apartment. The victim let herself in, but did not recall locking the door. She decided to rest before eating her meal. She lay down on the living room sofa and fell asleep.

In the tavern, defendant approached L.F. and asked where was the victim. L.F. told him that the victim was in L.F.’s apartment and that she would soon return. Saying that he would telephone the victim, defendant left. L.F. did not give defendant permission to enter her apartment.

The victim at first thought that she was dreaming about being with her husband. She felt her breast being sucked, her vaginal area being rubbed, and her hand rubbing a penis. She opened her eyes and saw defendant laying over her. The victim was wearing a jumpsuit that zipped and buttoned down the length of the suit’s front center. Both the zipper and the buttons were undone; her bra was pulled up over her breasts; her panties were still on. One of defendant’s hands was rubbing the victim’s hand on his exposed penis. During the subsequent police investigation and direct examination at trial, the victim stated that defendant’s other hand was rubbing her vagina over her panties. However, during cross-examination at trial, the victim testified that defendant’s other hand was rubbing her vaginal area both over and underneath her panties. As she awoke, she asked defendant what he had done and how he had gotten into the apartment. Defendant replied: “I am not finished, just let me finish,” or “let me go all the way.” The victim shouted at defendant and ordered him to leave the apartment.

Defendant left, and the victim locked the apartment door. The victim locked herself in the bathroom and repeatedly washed herself. Defendant telephoned the apartment; the victim answered the phone, hung up on him, and again locked herself in the bathroom. Defendant later returned to the apartment and knocked on the door, saying that he wanted to talk to her. The victim ignored him and remained in the bathroom.

Defendant returned to the tavern. L.F. asked him where was the victim. He answered that she was in the apartment. Deciding to check on the victim, L.F. went to her apartment. She knocked on her apartment door. L.F. heard the victim and asked what was wrong. The victim would not answer and would not let L.F. into the apartment. L.F. obtained a spare key and went inside. The victim was locked in the bathroom; with difficulty, L.F. persuaded the victim to open the door. The victim was crying, her clothes were undone, and she was washing herself. L.F. led the shaking victim to the living room, where she told L.F. what had happened.

They returned to the tavern. Defendant was still there, and L.F. confronted him. She shouted her accusations at defendant, who said that he did not do it, or even know what L.F. was talking about.

On June 5, 1998, a Quincy police officer took the initial report in this case. On June 8, Bryan Dusch, a Quincy police department investigator, interviewed the victim, L.F., and defendant. During his interview, defendant told Dusch the following. Defendant was with L.F. and the victim at L.F.’s apartment on the afternoon of June 3. Further, early the next morning, defendant was at Port’s Place for a short time. He saw L.F. there and asked where was the victim. L.F. told him that the victim was intoxicated and in L.F.’s apartment. Defendant initially told Dusch that he left the tavern to speak with friends outside. Defendant later admitted to Dusch that he went to L.F.’s apartment, knocked on the door, and received the victim’s permission to enter. She was sitting on the sofa. Initially, defendant denied any sexual interaction with the victim; he left the apartment when she told him that she was intoxicated and sick. Later, in tears, he told Dusch that he kissed the victim. She told him that she did not want to cheat on her husband, and then he left. Defendant returned to the tavern, where L.F. told him to leave the victim alone or L.F. would have him arrested. Defendant denied knowing why L.F. was upset with him. Dusch arrested defendant following the interview.

Defendant was ultimately charged in a five-count amended information. Counts I and V charged defendant with criminal sexual assault in that he, knowing that the victim was unable to give knowing consent, committed acts of sexual penetration. Count I charged that defendant placed the victim’s hand on his penis, and count V charged that defendant “rubbed the vagina of [the victim], through her clothing, with his finger.” See 720 ILCS 5/12–13(a)(2) (West 1998). Counts II and III charged defendant with criminal sexual abuse in that he, knowing that the victim was unable to give knowing consent, committed acts of sexual conduct. Count II charged that defendant fondled the victim’s breasts for the purpose of his sexual arousal, and count III charged that defendant “fondled the vagina of [the victim] through her clothing, for the purpose of [his] sexual arousal.” See 720 ILCS 5/12–15(a)(2) (West 1998). Count IV charged defendant with residential burglary in that he knowingly and without authority entered into L.F.’s dwelling with the intent to commit a criminal sexual assault. See 720 ILCS 5/19–3(a) (West 1998).

Defendant testified for the defense essentially as follows. Early on June 4, 1998, defendant left his job and went to his apartment. At approximately 1:45 a.m., defendant went to Port’s Place to have a beer. He saw an intoxicated L.F., who said that the victim was looking for him and was in L.F.’s apartment. Defendant went to L.F.’s apartment to learn what the victim wanted. The victim answered the door and hugged and kissed defendant. He was of the opinion that the victim was intoxicated. They sat on the sofa. He hugged and kissed her; she rubbed between his legs. The victim said that she found defendant attractive, but she cheated on her husband once before and did not want to do it again. Defendant left the victim and returned to Port’s Place. He denied undressing the victim or committing the acts charged.

In rebuttal, L.F. denied being intoxicated and telling defendant that the victim was looking for him. Also, the victim denied: telling L.F. or anyone else that she was looking for defendant, allowing defendant into L.F.’s apartment, and voluntarily touching defendant in any way.

At the close of the evidence, the trial court convicted defendant of counts I and V (criminal sexual assault), count III (criminal sexual abuse: fondling victim’s vagina), and count IV (residential burglary). The trial court acquitted defendant of count II (criminal sexual abuse: fondling victim’s breasts). The court found that the evidence of this charged conduct was adduced in the form of a dream the victim thought she was having. Further, upon denial of defendant’s post-trial motion, the court vacated the judgment on count III, finding that it was a lesser included offense of count V.

At the sentencing hearing, defendant testified in mitigation. He apologized to the victim for kissing and generally disrespecting her. However, defendant denied committing the acts charged. During his closing argument, defense counsel stated that under defendant’s version of events, when defendant “was asked to leave he immediately did so.” At the close of the sentencing hearing, the trial court sentenced defendant to prison terms of 8 years on count I, 10 years on count IV, and 12 years on count V, all to run consecutively.

Defendant appealed, challenging the sufficiency of the charging instrument as to the criminal sexual assault (counts I and V) and the sufficiency of the evidence as to the residential burglary conviction (count IV). The appellate court reversed defendant’s convictions of criminal sexual assault (311 Ill. App. 3d at 394-97) and affirmed his conviction of residential burglary (311 Ill. App. 3d at 397-99). The State appeals, and defendant cross-appeals.

DISCUSSION

The State contends that the appellate court erred in reversing defendant’s criminal sexual assault convictions. On cross-appeal, defendant contends that the appellate court erred in upholding his residential burglary conviction.

I. Criminal Sexual Assault

The State charged defendant with committing criminal sexual assault in that he, knowing that the victim was unable to give knowing consent, committed acts of sexual penetration. 720 ILCS 5/12–13(a)(2) (West 1998). Section 12–13(a) of the Criminal Code of 1961 provides in pertinent part: “The accused commits criminal sexual assault if he or she commits an act of sexual penetration and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent.” 720 ILCS 5/12–13(a)(2) (West 1998). Section 12–12(f) of the Code further defines this crime in pertinent part:

“ ‘Sexual penetration’ means any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration.” 720 ILCS 5/12–12(f) (West 1998).

This definition reflects a broad concept of “sexual penetration” for purposes of Illinois sex crimes. It defines two broad categories of conduct. It includes any 
contact
 between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person. Alternatively, the statutory definition includes any 
intrusion
 of any part of the body of one person or of any animal or object into the sex organ or anus of another person. This statutory concept of “sexual penetration” is broader than what was known under prior law. See generally 1 J. Decker, Illinois Criminal Law §§8.03, 8.10 (3d ed. 2000). Of course, the legislature has the power to define “sexual penetration” more broadly than its common and ordinary meaning. See 
People v. Burmeister
, 147 Ill. App. 3d 218, 222 (1986).

In this case, the “sexual penetration” that the State charged defendant with committing was: placing the victim’s hand on his penis (count I); and rubbing the victim’s vagina, through her clothing, with his finger (count V). The appellate court reversed defendant’s convictions on these counts. Applying the “contact” clause of the statutory sexual penetration definition to these counts, the appellate court held “that neither a finger nor a hand is an ‘object’ for purposes of contact between the sex organ or anus of one person and an object.” 311 Ill. App. 3d at 397. Applying the “intrusion” clause of the definition to counts I and V, the appellate court held that defendant’s acts as proved at trial did not constitute the offense. 311 Ill. App. 3d at 397.

A. 
Defective Charging Instrument

For the first time on appeal, defendant claimed that the amended information was defective. Where a defendant challenges the sufficiency of an indictment or information for the first time on appeal, a reviewing court need only determine whether the charging instrument apprised the defendant of the precise offense charged with enough specificity to prepare his or her defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. 
People v. DiLorenzo
, 169 Ill. 2d 318, 322 (1996); 
People v. Pujoue
, 61 Ill. 2d 335, 339 (1975). In making this determination, the reviewing court may resort to the record. 
People v. Gilmore
, 63 Ill. 2d 23, 30 (1976).

The State assigns error to the appellate court’s holding that neither a finger nor a hand is an object for purposes of the “contact” clause of the statutory definition of sexual penetration. We agree with the appellate court.

The controlling principles are familiar. The cardinal rule of statutory interpretation, to which all other rules are subordinate, is to ascertain and give effect to the intent of the legislature. In determining the legislative intent, a court should first consider the statutory language. This is the best means of determining the legislative intent. 
People v. Hickman
, 163 Ill. 2d 250, 261 (1994); 
People ex rel. Scott v. Schwulst Building Center, Inc.
, 89 Ill. 2d 365, 371 (1982). A court must consider the entire statute and interpret each of its relevant parts together. 
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 397 (1994); 
Castaneda v. Illinois Human Rights Comm’n
, 132 Ill. 2d 304, 318 (1989); 
People v. Wallace
, 57 Ill. 2d 285, 289-90 (1974). Where the statutory language is clear, it will be given effect without resort to other interpretative aids. 
People v. Sheehan
, 168 Ill. 2d 298, 305 (1995); 
Hickman
, 163 Ill. 2d at 261.

However, where the statutory language is ambiguous, a court may consider other interpretive aids, such as legislative history, to resolve the ambiguity and determine legislative intent. 
People v. Whitney
, 188 Ill. 2d 91, 97-98 (1999); 
People ex rel. Baker v. Cowlin
, 154 Ill. 2d 193, 197 (1992). Because the interpretation of a statute is a question of law, the standard of review is 
de novo
. 
People v. Robinson
, 172 Ill. 2d 452, 457 (1996).

The “contact” clause of the sexual penetration definition describes any contact between a person’s sex organ or anus by, 
inter alia
, an “object.” The State contends that the victim’s hand was an “object,” which came into contact with defendant’s penis (count I); and defendant’s finger was an “object,” which came into contact with the victim’s vagina (count V).

Because section 12–12(f) of the Criminal Code does not define the word “object,” we must assume that the legislature intended the term to have its ordinary and popularly understood meaning. 
Sheehan
, 168 Ill. 2d at 306. Invoking the plain language rule, the State cites one common definition of the word “object”: “something that is put or may be regarded as put in the way of some of the senses: a discrete visible or tangible thing.” Webster’s Third New International Dictionary 1555 (1993). The State correctly notes that an object can be animate or inanimate. The State argues that section 12–12(f) of the Criminal Code does not distinguish between animate or inanimate objects, or otherwise restrict the term “object.”

The State’s contention might persuade if we were to read the “contact” clause of Criminal Code section 12–12(f) in isolation. So viewed, the word “object” would be ambiguous because the legislature did not limit its meaning; the word could conceivably include an animate object such as a body part. However, the “intrusion” clause of section 12–12(f) includes not only the word “object,” but also expressly includes “any part of the body of one person or of any animal.” This plainly limits the word “object” to inanimate objects. Where a word is used in different sections of the same statute, the presumption is that the word is used with the same meaning throughout the statute, unless a contrary legislative intent is clearly expressed. 
Schwulst Building Center
, 89 Ill. 2d at 372; 
Moran v. Katsinas
, 16 Ill. 2d 169, 174 (1959).

Because the legislature has not clearly expressed a contrary intent, we will give the word “object” the same meaning throughout section 12–12(f) in accordance with this long-standing principle of statutory interpretation. Thus, reading section 12–12(f) as a whole, and considering both the “contact” and “intrusion” clauses of the statutory definition of sexual penetration together, we conclude that the word “object” in the “contact” clause of the statutory definition of sexual penetration was not intended to include parts of the body.

In addition, we note that our reading of the definition accords with the rule that a court should construe a statute, if possible, to give effect to each paragraph, sentence, clause, and word. A court should construe a statute, if possible, so that no term is rendered superfluous or meaningless. 
People v. Lutz
, 73 Ill. 2d 204, 212 (1978); accord 
Hernon v. E.W. Corrigan Construction Co.
, 149 Ill. 2d 190, 195 (1992). To adopt the State’s interpretation of the term “object” would render the term “any part of the body” in the “intrusion” clause of this section mere surplusage.

We agree with the appellate court that neither a hand nor a finger is an “object” for purposes of the “contact” clause of the statutory definition of sexual penetration. In this case, the victim’s hand cannot constitute an “object,” which came into contact with defendant’s penis (count I); and defendant’s finger cannot constitute an “object,” which came into contact with the victim’s vagina (count V).

We further agree with the appellate court that, despite this defect, counts I and V adequately informed defendant of the kind of sexual contact he was alleged to have initiated. 311 Ill. App. 3d at 397. Defendant testified that he left the victim in L.F.’s apartment. He denied performing not only the conduct described in the information, but also any other related or similar conduct. Thus, defendant has failed to show how the defect prejudiced his ability to prepare a defense to these charges. See 
DiLorenzo
, 169 Ill. 2d at 324-25.

B. 
Fatal Variance

Applying the “intrusion” clause of the statutory definition of sexual penetration to counts I and V, the appellate court reversed defendant’s convictions thereon.

The record shows that at the end of the State’s case, defendant moved for a directed verdict. He argued the existence of a variance between the charge of sexual penetration in counts I and V and the proof at trial:

“Essentially, Your Honor, in Counts 1 and 5 I believe both of these Counts allege sexual penetration. I believe in Count 5 it is–it is very clear, and, frankly, by the way it is charged it is improperly charged. Frankly, a rubbing or touching of the vaginal area would not be a penetration. There has to be actual penetration into the vaginal area. In the testimony today that clearly was not the case.”

The circuit court denied the motion prior to defendant presenting his defense.

On review, the appellate court addressed whether there was a fatal variance between the amended information and the evidence that resulted in defendant’s convictions on counts I and V. See 
People v. Montgomery
, 96 Ill. App. 3d 994, 996 (1981). To vitiate a trial, a variance between the allegations in a criminal complaint and the proof at trial must be material and be of such character as may mislead the defendant in making his or her defense, or expose the defendant to double jeopardy. 
People v. Figgers
, 23 Ill. 2d 516, 518-19 (1962); 
People v. Taylor
, 84 Ill. App. 3d 467, 469-70 (1980).

As to count I, the appellate court held that “placing a victim’s hand on a defendant’s penis does not constitute sexual penetration under section 12–12(f) of the Criminal Code.” 311 Ill. App. 3d at 397. We agree and so hold. This act, as proved at trial, is not an “intrusion” and cannot support a conviction of criminal sexual assault. We vacate defendant’s conviction on count I.

The appellate court also reversed defendant’s conviction on count V. The court held: “The State presented no evidence of any intrusion into [the victim’s] vagina by defendant’s hand or finger. Mere touching or rubbing of a victim’s sex organ or anus with a hand or finger does not prove sexual penetration and cannot, therefore, constitute criminal sexual assault.” 311 Ill. App. 3d at 397. In other words, the appellate court reversed defendant’s conviction on count V because his acts as proved at trial did not constitute the offense of criminal sexual assault as a matter of law. We agree.

During direct examination in the State’s case in chief, the victim testified that defendant rubbed her vagina 
over
 her panties. During cross-examination, the victim testified as follows:

“Q. [Defense counsel] All right. Now do you remember telling one of the officers when you awoke [defendant] was touching your vaginal area over your panties and over your jumpsuit?

A. Yes. Uh-huh.

Q. And that is actually what occurred; is that right?

A. I remember him caressing me through my–to my knowledge it was–my panties was still up but he was just rubbing and caressing me through–he got underneath my panties–and I felt underneath my panties and 
in
 my vagina area and through it just right through it and his fingers going underneath it.

Q. Underneath your panties?

A. Yes. Uh-huh.” (Emphasis added.)

The victim’s brief and vague reference to her vaginal area is not sufficient to prove an “intrusion” and cannot support a conviction of criminal sexual assault. We vacate defendant’s conviction on count V.

II. Residential Burglary

On cross-appeal, defendant claims that the State failed to prove beyond a reasonable doubt the offense of residential burglary. Of course, the State carries the burden of proving beyond a reasonable doubt each element of the offense and the defendant’s guilt. 
People v. Ware
, 23 Ill. 2d 59, 62 (1961).

A reviewing court will not set aside a criminal conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant’s guilt. When considering the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. Rather, the relevant question is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime. 
People v. Tye
, 141 Ill. 2d 1, 13-14 (1990); 
People v. Phillips
, 127 Ill. 2d 499, 509-10 (1989). We note that this standard of review applies in all criminal cases, whether the evidence is direct or circumstantial. 
People v. Gilliam
, 172 Ill. 2d 484, 515 (1996); 
People v. Campbell
, 146 Ill. 2d 363, 374-75 (1992).

“A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft.” 720 ILCS 5/19–3(a) (West 1998). The gist of the offense is the defendant’s felonious intent with which he or she enters the dwelling, which the State must prove beyond a reasonable doubt. See 
People v. Matthews
, 44 Ill. App. 3d 342, 344 (1976); see also 
People v. Toolate
, 101 Ill. 2d 301, 308 (1984); 
People v. Sehr
, 150 Ill. App. 3d 118, 122 (1986). “The offense is complete upon entering with the requisite intent. The actual commission of the intended offense is irrelevant.” 
People v. Palmer
, 83 Ill. App. 3d 732, 734 (1980). Defendant contends that the State failed to prove beyond a reasonable doubt that he intended to commit a felony as he entered L.F.’s apartment.

Criminal intent is a state of mind that not only can be inferred from the surrounding circumstances (
People v. Richardson
, 104 Ill. 2d 8, 12 (1984) (collecting cases)), but usually is so proved (
People v. Williams
, 222 Ill. App. 3d 129, 135 (1991) (collecting cases)). Such circumstances include the time, place, and manner of entry into the premises; the defendant’s activity within the premises; and any alternative explanations offered for his presence. 
People v. Cabrera
, 116 Ill. 2d 474, 492 (1987), quoting 
Richardson
, 104 Ill. 2d at 13. Whether the requisite intent existed is a question for the trier of fact, whose determination will not be disturbed on review unless a reasonable doubt exists as to the defendant’s guilt. 
Cabrera
, 116 Ill. 2d at 493.

In this case, the appellate court explained: “Although defendant did not actually commit a felony while in L.F.’s apartment, this fact alone does not require a finding that he did not 
intend
 to commit a felony.” (Emphasis in original.) 311 Ill. App. 3d at 398. The appellate court reasoned that the trial court, as the trier of fact, could have reasonably concluded from the evidence that defendant: (1) made repeated advances toward the victim; (2) went to L.F.’s apartment knowing the victim was there alone and intoxicated; (3) did not have L.F.’s permission to enter her apartment; and (4) saw the victim asleep on the living room sofa as he entered the apartment. 311 Ill. App. 3d at 398-99. According to the appellate court: “Under these circumstances, any rational trier of fact could have found that defendant had an intent to commit a felony at the time he entered the apartment.” 311 Ill. App. 3d at 399.

We agree and so hold. We uphold defendant’s conviction on count IV.

III. Sentencing

Lastly, we conclude that we need not remand the cause for resentencing. The circuit court sentenced defendant separately on each conviction, and the record does not otherwise show that the court considered the vacated convictions in imposing sentence on the remaining conviction. See 
People v. Buford
, 235 Ill. App. 3d 393, 404-05 (1992) (collecting cases); 
People v. Hines
, 105 Ill. App. 3d 35, 38 (1982) (collecting cases).

However, we find that the 10-year prison sentence on the residential burglary conviction (count IV) is manifestly disproportionate to the nature of the offense. Although defendant’s behavior was appalling and harmful, it was not severe enough to warrant the sentence imposed. In the exercise of this court’s supervisory authority under Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4); see 
People v. Jones
, 168 Ill. 2d 367, 373-78 (1995)), we reduce defendant’s sentence to five years on count IV. See, 
e.g.
, 
People v. Steffens
, 131 Ill. App. 3d 141, 151-53 (1985); 
People v. Gill
, 7 Ill. App. 3d 24, 31 (1972).

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed; the judgment of the circuit court of Adams County is modified to impose a sentence of five years’ imprisonment on defendant’s residential burglary conviction.

Appellate court judgment affirmed;

circuit court judgment

affirmed as modified.

JUSTICE GARMAN took no part in the consideration or decision of this case.