NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210471-U

NO. 4-21-0471

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 4, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| JARQUEZ A. HOBBS, | ) | No. 19CF1866 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed in part and reversed in part, holding the State failed to
prove defendant committed one of the acts of sexual penetration, an improper jury
instruction on a necessary element of the offense amounted to plain error, and the
trial court properly denied defendant's motion to strike the jury venire since there
was no reversible error during *voir dire*.

¶ 2    In an April 2021 trial, a jury found defendant, Jarquez A. Hobbs, guilty of home

invasion (720 ILCS 5/19-6(a)(2) (West 2018)), a Class X felony, and three counts of predatory

criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)), Class X felonies.

Defendant afterwards moved for a new trial, arguing the State failed to prove him guilty beyond

a reasonable doubt, the trial court erred in denying his motion to strike the venire, and the trial

court erred in allowing certain video evidence. In a May 2021 hearing, the trial court denied

defendant's motion and sentenced him to 54 years' incarceration in the Illinois Department of

Corrections (DOC), followed by mandatory supervised release (MSR) for a period of 3 years to life.

¶ 3        On appeal, defendant challenges his conviction on three grounds: (1) the State failed to prove him guilty beyond a reasonable doubt of one count of predatory criminal sexual assault, namely the State did not prove he committed an act of sexual penetration with his finger and R.S.'s vagina because there was no evidence of intrusion; (2) erroneous jury instructions and comments from the State during closing arguments misinformed the jury of the applicable definition of "sexual penetration"; and (3) the trial court erred in denying defendant's motion to strike the venire, thereby denying him a fair and impartial jury. We agree with defendant's first two arguments and disagree with the third; consequently, we affirm in part and reverse in part.

¶ 4                                I. BACKGROUND

¶ 5        In December 2019, by way of information, the State charged defendant with one count of home invasion (720 ILCS 5/19-6(a)(2) (West 2018)) (count I), alleging on or about August 5, 2019, "defendant, not a peace officer acting in the line of duty, knowingly, and without authority, entered the dwelling of Lakie [S.] and R.S. (DOB 8/27/2013), located at 821 E. Condit Street, Decatur, Macon County, Illinois, and remained in the dwelling place after he knew or had reason to know that one or more persons were present and committed the offense of Predatory Criminal Sexual Assault in violation of 720 ILCS 5/11-1.40(a)(1), against R.S., who was within the dwelling place." The State also charged defendant with three counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)), alleging on or about August 5, 2019, "defendant, who was over 17 years of age at the time of the offense, knowingly committed an act of sexual penetration with R.S. (DOB 8/27/2013), who was under the age of 13 at the time of the offense, in that the defendant placed his finger in the vagina of R.S." (count II),

he "placed his penis in the mouth of R.S." (count III), and he "placed his penis in the anus of R.S." (count IV) each "for the purpose of sexual gratification or arousal of the victim or the defendant." The matter proceeded to a jury trial in April 2021.

¶ 6 To begin *voir dire*, the trial court had 28 potential jurors brought into the courtroom, one panel of 14 brought "up front" and the other panel of "14 spread out in the pews." After the trial court's introductory remarks advising the panels of the parties, the charges, the potential witnesses, and swearing them in for questioning, Prospective Juror Storm interjected: "Can I save the jury a lot of time by saying I will not find the defendant guilty." The trial court interrupted Storm, stopping him from saying anything else at that time, and began questioning the panel. When the trial court asked if any potential juror heard anything about the case, Prospective Juror Woolf raised his hand. This colloquy followed:

"THE COURT: Mr. Woolf, do you recall hearing something or reading something?

PROSPECTIVE JUROR WOOLF: Yeah. I know family members of the victim.

THE COURT: Okay.

PROSPECTIVE JUROR WOOLF: And they say he'll get his own. He'll get what's coming to him.

THE COURT: Okay. Don't say stuff like that, Mr. Woolf.

PROSPECTIVE JUROR WOOLF: Well, you wanted me to be honest, that's what they told me.

THE COURT: Well, I want you to be honest, but I want, you know, we're trying to conduct a trial here. Okay. So all right my question now have you—have you— so you've heard something about this case?

PROSPECTIVE JUROR WOOLF: Yeah.

- 3 -

THE COURT:  Have you read anything about this case?

PROSPECTIVE JUROR WOOLF:  No.

THE COURT:  All right. And so you know some of the victim's family members, correct?

PROSPECTIVE JUROR WOOLF: Yes, I do.

THE COURT:  All right. And based on that relationship, do you believe you could be fair and impartial in this case?

PROSPECTIVE JUROR WOOLF:  Based on that relationship, no. I could be impartial for that but from my personal experiences in the past, I probably couldn't.

THE COURT:  All right. Very well. Thank you, Mr. Woolf."

Woolf later explained he had been molested as a child, he suffered post-traumatic stress, and being there made him nervous to the point of nausea. The trial court then addressed Prospective Juror Storm and the following exchange occurred:

"THE COURT:  So, Mr. Storm—

PROSPECTIVE JUROR STORM:  So just to save the city money and you time and money for me being here it just it would be best just to release me.

THE COURT:  Mr. Storm, you believe based on your own personal experiences—

PROSPECTIVE JUROR STORM:  I couldn't find him guilty even though I think he probably is.

THE COURT:  Okay. Hang on.

PROSPECTIVE JUROR STORM:  I shouldn't have said that but too bad. Sorry. Sorry about that.

THE COURT:  You believe that you—you fear you couldn't be fair to the State in this case; is that correct?

PROSPECTIVE JUROR STORM:  No, no, I could not.

THE COURT:  All right. Very well. ***"

As *voir dire* progressed, Storm stated he could not affirm he would follow the law, nor could he sign a guilty verdict form, even if the State proved its case beyond a reasonable doubt.

¶ 7        When the trial court and the attorneys went to chambers to exercise challenges and begin the selection process, defense counsel moved "to strike the entire venire based off the statements of Mr. Woolf." With the agreement of counsel, the trial court stated it would take up defense counsel's motion at a later time. Without objection from the State, defense counsel challenged Woolf for cause and the trial court excused Woolf for cause. After the parties selected four jurors, the trial court took up defense counsel's motion. Defense counsel argued Woolf's statements prejudiced the other prospective jurors because "the rest of the venire could take it to mean he knows something about the case that the others don't and has already pre-tried [defendant]." The State acknowledged Woolf's statements were "inappropriate" but argued they did not have to be construed to conclude "he has inside information," and it could be "easy to draw the conclusion he's a little rough around the edges and it was more about a general threat not because he had inside information." The State noted the court could admonish the jury to disregard Woolf's statements. The trial court denied the motion to strike the venire, stating the following:

"All right. Well I, too, very much wish Mr. Woolf would not have made the comments that he made in the presence of the other jurors, but I was very

- 5 -

quick, being myself, the Court, to stop Mr. Woolf in his comments. Basically, told him to not say anything like that again. He at that point did stop.

I agree with [the State], I think he's rough around the edges that, you know, he basically stated he knew the family and that [defendant]—or the victim's family and [defendant] would get what was coming to him, but he didn't reference any specific facts or anything of that nature so although, again, it's certainly not perfect, I don't think it's enough to prejudice the entire panel.

I think what I'll do is right before—or right after once we have a jury of 12 or 13 or 14, right after we swear them in, I think I'll gently remind them that there may have been certain things heard during the jury selection process that they are to disregard and they are to base their—they are to base their decision solely upon the evidence presented in the courtroom."

In the next round of challenges, Storm was excused for cause.

¶ 8        In its case-in-chief, the State presented evidence through various witness testimony that, in the early hours of August 5, 2019, a man opened a window, reached in to unlock the door, and entered through the backdoor of R.S.'s residence at 821 Condit Street, Decatur, Illinois. He picked up R.S. from the floor of her bedroom and carried her to the dining room. The man touched R.S.'s "bahoopahopper" with his hand. Five-year-old R.S. considered her bottom her "bahoopahopper," but her mother explained "bahoopahopper" included the anus and vagina. The man then pulled down his red shorts and inserted his penis into R.S.'s "bare mouth" and her "bahoopahopper." She elaborated the man put his "boy part" in the place where she "goes pee" and the place where she "goes poop." He then kissed her cheek, laid her down, and exited the residence through the back door.

¶ 9        The State also presented forensic evidence. Kelly Maciejewski, a forensic scientist in the Illinois State Police Forensic Science Laboratory, testified that swabs taken of R.S.'s mouth, vagina, and anus during a sexual assault examination contained both female and male deoxyribonucleic acid (DNA). Maciejewski explained that the female DNA so "overwhelmed" the male DNA in the samples from R.S.'s mouth and vagina that she could not deduce a male DNA profile to go forward with more testing on those samples. The sample from R.S.'s anus contained enough male DNA for Maciejewski to generate a partial profile and conduct further testing. She testified she was able to compare the partial profile to the DNA profile she obtained from defendant's buccal swab. When asked to explain her findings, Maciejewski said: "That profile that I determined at the nine locations that male profile could have been contributed by [defendant]. At each of the nine locations that I identified DNA at, they matched up with *** the DNA profile that he has also at the locations." In other words, she said, "[Defendant] cannot be excluded as a contributor to the nine location profile or you could also say it as is included as a possible contributor of that nine location profile." Maciejewski explained the statistical significance of her findings, saying "one in 3.4 million people would be expected to have that nine location profile." Considering the populations of the United States and Illinois, Maciejewski determined approximately "four people in the State of Illinois" and "100 people in the United States would be expected to be a potential contributor to this nine location profile."

¶ 10        The State also presented fingerprint evidence. Scott Cline, who examined the latent prints lifted from the window by the backdoor and compared them to defendant's known fingerprint samples, explained the detail and similarities between the two sets of fingerprints. He testified there was more support for the fingerprints on the window being made by defendant

than by a different person. Cline acknowledged he could not say with 100% certainty, but he noted, "to date no two people have been found to have the exact same fingerprints." He testified the level of detail and the number of features found in the latent prints which were similar to the known sample were greater than could be made by anyone else, which supported his conclusion that defendant left the fingerprints on the window.

¶ 11 The jury eventually found defendant guilty on all four counts. Defendant moved for a judgment notwithstanding the verdict or in the alternative for a new trial. As is relevant to this appeal, defendant argued the trial court erred in denying his motion to strike the venire given Woolf's comment "during *voir dire* that he knew the family of the victim and that the Defendant would 'get was [*sic*] is coming to him.' " Defendant also argued the evidence was insufficient to prove him guilty beyond a reasonable doubt. The trial court denied the motion, noting any error in jury selection "was minor" and "there was certainly sufficient evidence in this case to prove the defendant guilty beyond a reasonable doubt."

¶ 12 At sentencing, the trial court noted, "Count I is home invasion, which alleges as its basis or predicate offense predatory criminal sexual assault. And then Counts II, III, and IV, of which the defendant was convicted all allege predatory criminal sexual assault." The court inquired of counsel their positions as to whether count II should merge with count I. The State argued merger was not appropriate and "ask[ed] that [defendant] be sentenced on all four [counts] each term consecutive." Defense counsel maintained, "Count I of the home invasion would merge with at least one of the other predatory criminal sexual assaults as well." The trial court agreed, stating: "I'm going to find that one of the predatory criminal sexual assault counts, Count II, since it is the predicate offense in Count I, I'm going to find that Count II for sentencing purposes merges into Count I." The trial court sentenced defendant to 6 years in DOC

on count I and 24-year terms in DOC on counts III and IV followed by MSR for a period of 3 years to life. It ordered all terms to run consecutively.

¶ 13    This appealed followed. Additional facts will be supplied as needed.

¶ 14                              II. ANALYSIS

¶ 15    Defendant raises three arguments on appeal: (1) the State failed to prove him guilty beyond a reasonable doubt of one count of criminal predatory sexual assault (sexual penetration with his finger and R.S.'s vagina) because it did not show "intrusion"; (2) the trial court's instruction to the jury which included the incomplete and improper definition for "sexual penetration" amounted to plain error; and (3) the trial court erroneously denied defendant's motion to strike the venire, which deprived defendant of a fair and impartial jury. We take each argument in turn.

¶ 16                    A. Sufficiency of the Evidence

¶ 17    "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When a defendant appeals his convictions, arguing the State failed to satisfy this burden of proof, a reviewing court will not retry the defendant but asks " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Cunningham*, 212 Ill. 2d at 278 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Though defendant challenges the sufficiency of the evidence, to the extent his argument requires us to consider the statutes governing the offense, particularly what the State

had to show to prove him guilty beyond a reasonable doubt, we review those issues *de novo*. *People v. Schneider*, 2019 IL App (5th) 150106, ¶ 26, 127 N.E.3d 896.

¶ 18    In order to prove defendant guilty beyond a reasonable doubt of criminal predatory sexual assault of a child as alleged in count II, the State had to establish three elements: (1) defendant knowingly committed an act of sexual penetration with R.S. when he "placed his finger in the vagina of R.S.," (2) defendant was 17 years of age or older when he committed the act, and (3) R.S. was under 13 years of age when the act was committed. 720 ILCS 5/11-1.40(a)(1) (West 2018) (Illinois Pattern Jury Instructions, Criminal, No. 11.104 (approved April 29, 2016)). Defendant concedes the State proved the second and third elements beyond a reasonable doubt and contests only the first—he knowingly committed an act of sexual penetration by placing his finger in R.S.'s vagina. Specifically, defendant contends the State presented insufficient evidence to prove the "intrusion" element necessary when the State alleges digital penetration. We agree.

¶ 19    Under Illinois law, the State can allege "sexual penetration" occurred in one of two ways—through contact or intrusion. The Criminal Code of 2012 defines "sexual penetration" as "any *contact*, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, *or* any *intrusion*, however slight, of any part of the body of one person or of any animal or object *into* the sex organ or anus of another person ***." (Emphases added.) 720 ILCS 5/11-0.1 (West 2018). Besides the intrusion clause's "into" criterion, it differs from the contact clause based on what is used to penetrate the victim.

¶ 20    In *People v. Maggette*, 195 Ill. 2d 336, 747 N.E.2d 339 (2001), our supreme court addressed the differences between the "contact" and "intrusion" clauses within the "sexual

- 10 -

penetration" definition. There, as part of a five-count information, the State charged two counts of criminal sexual assault, alleging the defendant, knowing the victim was unable to give knowing consent, committed acts of sexual penetration by placing the victim's hand on his penis and by rubbing the victim's vagina through her clothing with his finger. *Maggette*, 195 Ill. 2d at 344. The issue on appeal was whether "a finger [or] a hand is an object for purposes of the 'contact' clause of the statutory definition of sexual penetration." *Maggette*, 195 Ill. 2d at 348. The court observed both the contact and intrusion clauses contained the undefined term "object" and noted statutory interpretation principles dictated it must have "the same meaning throughout the statute, unless a contrary legislative intent is clearly expressed." *Maggette*, 195 Ill. 2d at 349. "The 'contact' clause *** describes any contact between a person's sex organ or anus by, *inter alia*, an 'object.' " *Maggette*, 195 Ill. 2d at 349. The intrusion clause, by contrast, "includes not only the word 'object,' but also expressly includes 'any part of the body of one person or of any animal.' " *Maggette*, 195 Ill. 2d at 349. Comparing these two clauses and reading the statute as a whole, the supreme court "conclude[d] that the word 'object' in the 'contact' clause of the statutory definition of sexual penetration was not intended to include parts of the body," otherwise "the term 'any part of the body' in the 'intrusion' clause" would be "mere surplusage." *Maggette*, 195 Ill. 2d at 350. The supreme court determined the term "object" in the sexual penetration definition is "plainly limit[ed] *** to inanimate objects." *Maggette*, 195 Ill. 2d at 349. Consequently, the supreme court held "that neither a hand nor a finger is an 'object' for purposes of the 'contact' clause." *Maggette*, 195 Ill. 2d at 350.

¶ 21     We take from *Maggette* the basic rule that if the State charges a crime where sexual penetration by way of a hand or a finger is an element, then it must prove intrusion. In

charging count II criminal predatory sexual assault of a child here, sexual penetration by placing his finger in R.S.'s vagina, the State pleaded intrusion, but it failed to prove intrusion.

¶ 22        When asked "what part of [the] bad guy's body touched the part where you go pee?" R.S. testified "the hand." She also testified defendant touched her "where she goes pee" with his "part that he goes pee." R.S.'s mother testified she asked R.S. if defendant touched her with his hands and she said R.S. answered yes. Male DNA was found in R.S.'s vaginal swab. Dr. Careyena Brenham testified she conducted a colposcopic examination of R.S. on August 22, 2019. She testified that using this specialized microscope, R.S.'s external genitalia "looked fine," but she noticed R.S.'s hymen had a "notch" or "just a dip *** at the 7:00 position." Dr. Brenham testified, "hymens can be different shapes. They can have notching, they can have curves to them[.]" But she also expressed concern "that notching that there could've been prior trauma to that area that would have caused a tear in the hymen and then that would have healed with a kind of divot in it, too." Dr. Brenham documented the notch in R.S.'s hymen "could be for her an anatomic variation just the way her hymen was versus prior versus secondary to trauma." Dr. Brenham also said R.S. told her, both by words and actions, "that she was touched with the person's penis and said that it was in the buttocks area." R.S. also described how "she was touched with his penis in her mouth" but made no reference, at that time, to being touched by his hand.

¶ 23        These facts are undisputed. But even considering this evidence favorably toward the State, we cannot, as a matter of law, affirm it sufficiently proved defendant guilty beyond a reasonable doubt of count II. See *People v. Smith*, 191 Ill. 2d 408, 411, 732 N.E.2d 513, 514 (2000) (stating the principle that when "the facts are not in dispute, defendant's guilt is a question of law"). Remember, in count II the State elected to charge sexual penetration "in that

the defendant placed his finger in the vagina of R.S." Although R.S., who was clearly found credible by the trial court, indicated defendant touched her genital area with his hand, the evidence was not clear defendant touched her vagina with his hand, as charged by the State. The State, perhaps inadvertently, confused the matter further when it asked Dr. Brenham to explain "labial penetration." She responded: "So when we talk about penetration, we're talking about anything that is passing past something. So labial penetration would be anything that passes past the labia and so you can see [using People's Ex, 24, slide No. 21] that would even be in front of the hymen and not all the way to the vagina because the vagina is posterior, if we're talking about dimensional look here. So the vagina is posterior to the hymen, but penetration of a penis or finger or anything can be past that labia and can be right in front of the hymen without even going past the hymen but is still a penetrative type of process." Viewing the evidence in a light most favorable to the State, it may have shown some degree of touching R.S.'s genital area with defendant's hand, but it did not show intrusion of a finger *into* R.S.'s vagina. "Mere touching or rubbing of a victim's sex organ or anus with a hand or finger does not prove sexual penetration ***." *People v. Maggette*, 311 Ill. App. 3d 388, 397, 723 N.E.2d 1238, 1245 (2000), *aff'd by Maggette*, 195 Ill. 2d at 355. Although male DNA was detected in R.S.'s vaginal swab and her hymen notch may have been caused by trauma, there was evidence defendant also touched R.S.'s vagina with his penis, which was a separate count. More importantly, defendant's hand is not an object. As the *Maggette* court instructed, "defendant's [hand or] finger cannot constitute an 'object,' which came into contact with the victim's vagina." *Maggette*, 195 Ill. 2d at 350. Yet the jury was repeatedly misinformed that defendant's finger was an object for purposes of the sexual penetration element. During closing argument, the State informed the jury:

- 13 -

"So there's going to be a verdict form for each count, but this is how I'm going to distinguish when we're talking about what sexual penetration is. So placed his finger in the vagina of [R.S.]. The term, *sexual penetration*, means any contact however slight between an object and the sex organ of another person, I'm picking up for this count, placed his finger in the vagina. It's any contact however slight." (Emphasis added.)

Furthermore, the jury instruction defining "sexual penetration" (Illinois Pattern Jury Instructions, Criminal, No. 11.65E (approved July 18, 2014) (hereinafter IPI Criminal No. 11.65E)) read to the jury was a modification of only the first of two alternative paragraphs: "The term 'sexual penetration' means any contact, however slight, between an object, the sex organ or anus of one person and the sex organ, mouth or anus of another person." The actual instruction reads: "any contact, however slight, between the sex organ or anus of one person and an object, sex organ, mouth or anus of another person." IPI Criminal No. 11.65E. Although minor, this further confuses the issue since the defendant was not charged this way. Considering how count II was charged (intrusion clause), the evidence presented (defendant touched R.S.'s unspecified genital area with his hand), and how the jury was instructed (contact clause), we cannot conclude the State proved defendant guilty beyond a reasonable doubt. We, therefore, vacate defendant's conviction on count II. At sentencing, the trial court found count II merged into count I since the State alleged predatory criminal sexual assault as the predicate offense for home invasion. From our review of the record, it appears the trial court chose count II for merger because it was the first predatory criminal sexual assault count and not for any substantive reason. Since the State proved counts III and IV beyond a reasonable doubt and defendant did not challenge those

convictions on appeal, upon remand, the trial court can address the issue of the merger of count I (home invasion) with the remaining counts for purposes of resentencing.

¶ 24    We observe the State could have avoided the contact versus intrusion dilemma had it opted to charge criminal predatory sexual assault *without* sexual penetration, as the statute permits. Section 11-1.40(a) provides: "A person commits predatory criminal sexual assault of a child if that person is 17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person *and the part of the body of another* for the purpose of sexual gratification or arousal of the victim or the accused, *or* an act of sexual penetration, and: (1) the victim is under 13 years of age[.]" (Emphases added.) 720 ILCS 5/11-1.40(a) (West 2018). Had the State charged defendant under section 11-1.40(a)'s first clause rather than the second—he committed an act of contact between R.S.'s sex organ and his hand—then it could have avoided *Maggette*'s interpretation for "sexual penetration" and the need to show intrusion.

¶ 25                              B. Jury Instructions

¶ 26    Defendant next argues the incorrect jury instruction defining sexual penetration amounted to plain error. We agree.

¶ 27    Defendant acknowledges he forfeited this issue because he failed to object to the sexual penetration jury instruction, nor did he raise the issue in a posttrial motion. *People v. Herron*, 215 Ill. 2d 167, 175, 830 N.E.2d 467, 472 (2005). "Supreme Court Rule 451(c), however, provides that 'substantial defects' in criminal jury instructions 'are not waived by failure to make timely objections thereto if the interests of justice require.' " *Herron*, 215 Ill. 2d at 175. The supreme court instructed, "Rule 451(c) is coextensive with the 'plain error' clause of Supreme Court Rule 615(a), and [courts] construe these rules 'identically.' " *Herron*, 215 Ill. 2d at 175 (quoting *People v. Armstrong*, 183 Ill. 2d 130, 151 n.3, 700 N.E.2d 960, 969 (1998)).

- 15 -

"[U]nder either rule this court will invoke the plain-error doctrine to review procedurally defaulted instructional errors—though the evidence is not closely balanced—if substantial rights are implicated and the fundamental fairness of the proceeding is in doubt." *People v. Durr*, 215 Ill. 2d 283, 297, 830 N.E.2d 527, 535 (2005). "Fairness, in short, is the foundation of our plain-error jurisprudence." *Herron*, 215 Ill. 2d at 177. We note, "[t]he first step of plain-error review is determining whether any error occurred." *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010).

¶ 28    As it relates to jury instructions generally, "[t]he function of the instructions is to convey to the jurors the correct principles of law applicable to the facts so that they can arrive at a correct conclusion according to the law and the evidence." *People v. Williams*, 181 Ill. 2d 297, 318, 692 N.E.2d 1109, 1121 (1998) (citing *People v. Cadwallader*, 181 Ill. App. 3d 488, 503, 536 N.E.2d 1319, 1328 (1989)). Building from *Williams*, we previously concluded, "[f]undamental fairness requires a trial court to give correct instructions on the elements of an offense charged to ensure a fair determination of the case by the jury." *People v. James*, 331 Ill. App. 3d 1064, 1068, 773 N.E.2d 1176, 1179-80 (2002) (citing *Williams*, 181 Ill. 2d at 318)). To warrant relief under either Rule 451(c) or 615(a), the "defendant must show that the alleged instructional error 'creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial.' " *Durr*, 215 Ill. 2d at 299 (quoting *People v. Hopp*, 209 Ill. 2d 1, 8, 805 N.E.2d 1190, 1194 (2004)).

¶ 29    Defendant knowingly committing an act of sexual penetration with R.S. is an essential element for the offense of predatory criminal sexual assault of a child as charged in count II. The trial court here gave the following instruction defining "sexual penetration": "The

term 'sexual penetration' means any contact, however slight, between an object, the sex organ or anus of one person and the sex organ, mouth or anus of another person." However, this is only half of the Illinois Pattern Jury Instruction defining "sexual penetration." IPI Criminal No. 11.65E gives the full statutory definition, including the intrusion clause: "the term 'sexual penetration' means any *** intrusion, however slight, of any part of [(the body of one person) (any animal) (any object)] into the [(sex organ (anus)] of another person ***." This is the instruction that should have been given for count II. As we explained *supra*, by alleging defendant placed his finger in R.S.'s vagina as the requisite act of sexual penetration for count II, the State had to prove intrusion and, therefore, should have proposed a jury instruction defining "sexual penetration" with the intrusion clause. We cannot account for that fatal omission.

¶ 30    Defendant directs our attention to *James*, as an analogous, if not dispositive, case to the issue at hand. There, like here, the State charged the defendant with predatory criminal sexual assault of a child "in that he 'placed his finger in the sex organ' " of the victim. *James*, 331 Ill. App. 3d at 1065. Even though this court had already held a finger cannot be an object for purposes of the contact clause (*Maggette*, 311 Ill. App. 3d at 397), the State opted to proceed under the contact clause rather than the intrusion clause and "the jury was instructed '[t]he term "sexual penetration" means any contact, however slight, between the sex organ or anus of one person and an object *or finger*.' " (Emphasis in original.) *James*, 331 Ill. App. 3d at 1068. After expressing bewilderment at why the State chose to proceed the way it did and offer a modified instruction, why the defense raised no objection, and why the trial court gave an erroneous objection, we held, "[t]he jury instruction as to sexual penetration was clearly erroneous." *James*, 331 Ill. App. 3d at 1069. We then reviewed how the State's closing argument reemphasizing the incorrect jury instruction also amounted to plain error. *James*, 331 Ill. App. 3d at 1070. We

concluded the defendant's "conviction must be reversed due to the incorrect jury instructions and the State's reliance on those instructions in closing argument." *James*, 331 Ill. App. 3d at 1070.

¶ 31    We find this case just as bewildering and conclude, unfortunately, that it merits the same outcome as *James*. In addition to being modified slightly, the jury instruction here was clearly erroneous. It misinformed the jury of what the State had to prove. Likewise, the State compounded the error by reiterating the improper jury instruction during closing argument. By using the contact clause rather than the intrusion clause to define sexual penetration, the instruction failed to inform the jury of the applicable legal standard for the facts alleged— defendant knowingly committed an act of sexual penetration with R.S. by placing his finger in R.S.'s vagina. The jury did not have a legal principle applicable to the evidence presented. The evidence showed defendant touched R.S.'s genital area with his hand, but, as a matter of law, a hand cannot be an object for purposes of the contact clause. *Maggette*, 195 Ill. 2d at 350. Without having the proper legal principle to apply to the facts before it, the jury could never arrive at the correct conclusion. See *Williams*, 181 Ill. 2d at 318; *People v. Ramey*, 151 Ill. 2d 498, 535, 603 N.E.2d 519, 534 (1992).

¶ 32    Sexual penetration is an essential element for the offense of predatory criminal sexual assault of a child. 720 ILCS 5/11-1.40(a) (West 2018). When the jury is misinformed on the definition for an essential element of the crime charged, that error undermines fundamental fairness and " 'threatens the very integrity of the judicial process.' " *Durr*, 215 Ill. 2d at 298 (quoting *People v. Blue*, 189 Ill. 2d 99, 138, 724 N.E.2d 920, 941 (2000)). Consequently, we must conclude failing to properly instruct the jury on the definition for sexual penetration applicable to count II, enhanced by the State's recitation of the incorrect definition during closing argument, amounted to plain error. See *James*, 331 Ill. App. 3d at 1069-70.

¶ 33                                    C. *Voir Dire*

¶ 34         Defendant finally alleges the trial court abused its discretion in denying his motion to strike the entire venire. Specifically, he argues that comments from prospective juror Woolf prejudiced the entire venire and denied him his right to a fair trial before an impartial jury. We disagree.

¶ 35         "The right to a jury trial guarantees to one accused of a crime a fair trial by a panel of impartial jurors." *People v. Cole*, 54 Ill. 2d 401, 411, 298 N.E.2d 705, 711 (1973). To be sure, the right to an impartial tribunal "is so basic that a violation of the right requires a reversal." *Cole*, 54 Ill. 2d at 411. An impartial jury decides the facts based on the evidence alone. Accordingly, "[t]he jurors must harbor no bias or prejudice which would prevent them from returning a verdict according to the law and evidence." *People v. Strain*, 194 Ill. 2d 467, 476, 742 N.E.2d 315, 320 (2000). Jurors are biased when they have "such fixed opinions that they could not judge impartially the guilt of the defendant." *People v. Runge*, 234 Ill. 2d 68, 103, 917 N.E.2d 940, 959 (2009).

¶ 36         *Voir dire* seeks to reveal and remove potential juror bias and partiality. Indeed, " '[t]he purpose of *voir dire* is to ascertain sufficient information about prospective jurors' beliefs and opinions so as to allow removal of those members of the venire whose minds are so closed by bias and prejudice that they cannot apply the law as instructed in accordance with their oath.' " *Strain*, 194 Ill. 2d at 476 (quoting *People v. Cloutier*, 156 Ill. 2d 483, 495-96, 622 N.E.2d 774, 781 (1993)). Trial courts enjoy broad discretion over *voir dire* and the jury selection process. *People v. Applewhite*, 2016 IL App (4th) 140558, ¶ 78, 68 N.E.3d 986. Fittingly, "the question of whether jurors have been influenced and prejudiced to such an extent that they would

not, or could not, be fair and impartial involves a determination that must rest in sound judicial discretion." *Runge*, 234 Ill. 2d at 104.

¶ 37    Defendant contends Woolf's statements prejudiced the entire venire and provided sufficient grounds for granting his motion to strike the venire, which the trial court eventually denied. These are the statements defendant believes prejudiced and tainted the entire venire:

> "THE COURT:  Mr. Woolf, do you recall hearing something or reading something?
>
> PROSPECTIVE JUROR WOOLF:  Yeah. I know family members of the victim.
>
> THE COURT: Okay.
>
> PROSPECTIVE JUROR WOOLF:   And they say he'll get his own. He'll get what's coming to him.
>
> THE COURT: Okay. Don't say stuff like that, Mr. Woolf.
>
> PROSPECTIVE JUROR WOOLF:  Well, you wanted me to be honest, that's what they told me.
>
> THE COURT:  Well, I want you to be honest, but I want, you know, we're trying to conduct a trial here. Okay."

Defendant argues these statements indicated to the other potential jurors that Woolf knew "insider (hearsay) information" that defendant was guilty and, consequently, tainted the entire venire. Defendant posits the prejudice from these comments manifested in Storm's statement that "I couldn't find [defendant] guilty even though I think he probably is." Defendant further suggests the other potential jurors who heard Woolf were afterwards afraid to voice their bias like Storm did. Arguing the existence of something from its absence in the record does not make it so. The record does not support defendant's effort to prove a negative.

¶ 38    Before Woolf made the comments at issue here, Storm had already said, "Can I save the jury a lot of time by saying I will not find the defendant guilty." Storm later explained he would not find defendant guilty because he had previously been to prison. He claimed he could not be fair. Though he said he understood and accepted the *Zehr* principles (*People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984)), Storm said he could not follow the law and would not sign a guilty verdict even if the State proved its case. In our view, Storm's comment about defendant "probably being guilty" was part of his effort to be excused and not a reflection of prejudice produced from Woolf's comment. His claim that he would not send a person to jail did not signal a strict adherence to the principle that a person is innocent until proven guilty that Woolf's comment somehow undermined. Given Storm's tactics to be removed from the jury panel, we do not see him as an example of how prejudice permeated from Woolf's comment.

¶ 39    Likewise, the record does not indicate potential prejudice from Woolf's comment tainted other jurors. All remaining jurors in the panels affirmed they understood and accepted the *Zehr* principles. There is no indication in the record the trial court prevented the other members of the venire from voicing their opinions about defendant, this case, or if they had any issues with being impartial, and those who did speak up did not mention Woolf's comments. Defendant merely speculates other jurors were biased by Woolf's comments, which is insufficient for relief. See *People v. Tucker*, 193 Ill. App. 3d 849, 857, 550 N.E.2d 581, 586 (1990) ("[M]ere suspicion of bias or partiality is not sufficient to disqualify a juror.").

¶ 40    We note Woolf's comments, when considered in their entirety, did not prejudice defendant. Woolf affirmed he understood and accepted the *Zehr* principles. More importantly, he said he could be impartial even though he knew R.S.'s family and had talked with them about it.

Woolf explained he could not be impartial because he had been sexually abused as a child and suffered from post-traumatic stress disorder.

¶ 41 Defendant likens his case to *United States v. Rowe*, 106 F.3d 1226 (5th Cir. 1997), and urges a similar result, reversal and remand. We disagree. In *Rowe*, in the presence of potential jurors, the judge issued a warrant for a person who failed to appear for jury duty. *Rowe*,106 F.3d at 1228. The judge then directed the United States Marshal to arrest the person and bring her to court so she could have her show cause for her non-appearance. *Rowe*, 106 F.3d at 1228. Then, addressing the potential jurors in the courtroom, the judge said: " 'Now aren't you all *** glad you appeared?' " *Rowe*, 106 F.3d at 1228. When two potential jurors said they would have difficulty being impartial due to their ties to law enforcement, the judge became combative and confrontational, telling both jurors they would be put on the jury panels for February, March, and April. *Rowe*, 106 F.3d at 1228. The judge called the jurors' reasons " 'made up' " and " 'hard *** to believe.' " *Rowe*, 106 F.3d at 1228-29. The judge even told one juror to " 'take some remedial constitutional inquiries' " before returning the next month. *Rowe*, 106 F.3d at 1228. When the judge asked further questions of other jurors, they remained silent or nodded. Defense counsel moved to strike the venire, which the judge denied. In a posttrial motion raising the issue, defense counsel claimed a potential juror came forward after trial and said she felt intimated by the court's treatment of the other jurors. The trial court denied that motion, too. *Rowe*, 106 F.3d at 1229. The Fifth Circuit reversed on appeal, holding, "the district court abused its discretion in not dismissing the panel on motion of the defense counsel." *Rowe*, 106 F.3d at 1230. The court found, "[t]he trial court's actions in this case cut off the vital flow of information from venire to court." *Rowe*, 106 F.3d at 1230. The court found the judge's conduct

intimidated the panel and made it "impossible for counsel to get the information from potential jurors necessary for jury selection." *Rowe*, 106 F.3d at 1230.

¶ 42 We find *Rowe* nothing like the case before us now. While direct with the jurors, the trial court remained respectful and courteous. Here, the trial court made no threats to Woolf or any potential juror. In response to Woolf's comments about what R.S.'s family told him, the trial court said, "Don't say stuff like that *** we're trying to conduct a trial here." Later when Woolf struggled to explain his past abuse, the court assured him, "I get it. Believe me it's not easy on anyone." When Storm interrupted *voir dire* to say he would not find the defendant guilty, the court told him, "Okay. Hang on, sir. We're going to get [to] you to [*sic*] in just a second." Unlike Rowe, this trial court did not threaten, berate, or punish jurors who claimed they could not be impartial. There is no suggestion from the record that any potential juror felt intimidated by the trial court during *voir dire*. *Rowe*, therefore, does not apply here and this case does not merit the same disposition.

¶ 43 Ultimately, the trial court observed the circumstances surrounding Woolf's comments and the response from other potential jurors, including Storm. The trial court questioned the jurors and oversaw the questioning from the parties. The trial court was acquainted with the situation. When denying the motion to strike the venire, the trial court recounted how he stopped Woolf from saying more, he assessed Woolf's demeanor, and he noted Woolf had not "reference[d] any specific facts or anything of that nature." Having observed, listened to, and questioned the jurors directly, the trial court determined Woolf's comment did not prejudice the entire panel and it denied the motion. We will not and should not seek to second-guess such conclusions from a cold transcript and cannot say the trial court abused its discretion. See *Applewhite*, 2016 IL App (4th) 140558, ¶ 78.

¶ 44                                III. CONCLUSION

¶ 45        For the reasons stated, we reverse defendant's conviction on count II, and because count II served as the predicate offense for count I, the home invasion count, we remand to the trial court for resentencing in light of this order, and we otherwise affirm the trial court's judgment on the remaining counts.

¶ 46        Affirmed in part and reversed in part; cause remanded with directions.