NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220324-U

NO. 4-22-0324

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 15, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| ERIC G. MASSENBURG, | ) | No. 16CF379 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice DeArmond and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The victim's testimony that defendant "touched" the "private part" that the victim "peed with" is insufficient to prove sexual penetration in the sense of intrusion, however slight, of any part of the body of one person into the sex organ of another person.

(2) By omitting the issue in his amended posttrial motion, defendant has forfeited the issue of whether the circuit court erred by denying his pretrial requests for the appointment of standby counsel.

(3) The circuit court did not abuse its discretion by denying defendant's mid-trial request for the appointment of standby counsel, considering that (a) defendant had declared a lack of confidence in the public defender's office and (b) the court had the right to decide that standby counsel, if any, would come from the public defender's office.

(4) By asking defendant how defense counsel's performance related to defendant's *pro se* claim that he was entitled to a new trial, the circuit court fulfilled its duty under *People v. Krankel*, 102 Ill. 2d 181 (1984), to inquire into the factual basis of defendant's posttrial *pro se* claim of ineffective assistance of counsel.

¶ 2        Having been sentenced by the circuit court of Winnebago County to natural life imprisonment for predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2010); 720 ILCS 5/11-1.40(a)(1) (West 2012); 720 ILCS 5/11-1.40(a)(1) (West 2014); 720 ILCS 5/11-1.40(a)(1) (West 2016)), defendant, Eric G. Massenburg, appeals. The grounds of his appeal are threefold.

¶ 3        First, he contends the evidence was insufficient to prove the element of sexual penetration alleged in count VII of the superseding indictment. Even when we view all the evidence in a light most favorable to the prosecution, as we are required to do (see *People v. Collins*, 106 Ill. 2d 237, 261 (1985)), we conclude that no rational trier of fact (considering the matter reasonably) could find, beyond a reasonable doubt, the intrusion alleged in count VII. We agree, then, with this first contention.

¶ 4        Second, defendant contends that the circuit court erred by refusing his requests to appoint standby counsel. Defendant has procedurally forfeited any claim of error in the denials of his pretrial requests for standby counsel. As for his mid-trial request for standby counsel, we find no abuse of discretion in the court's denial of that request. Defendant's mid-trial request for standby counsel (who, the court was entitled to decide, would come from the public defender's office) was inconsistent with defendant's stated lack of confidence in the public defender's office.

¶ 5        Third, defendant asserts that the circuit court failed to make a preliminary inquiry into his posttrial *pro se* claim of ineffective assistance of counsel. The record belies this assertion.

¶ 6        Therefore, we reverse the conviction and sentence on count VII of the superseding indictment, but we otherwise affirm the judgment.

¶ 7                                I. BACKGROUND

¶ 8       On February 11, 2016, Detective Jason Cebuhar charged defendant, by criminal complaint, with three counts of predatory criminal sexual assault of a child. The alleged victim in all three counts was one of defendant's daughters, A.E., who was born on February 10, 2006.

¶ 9       On March 9, 2016, a grand jury returned an indictment, which charged defendant with five counts of predatory criminal sexual assault of a child. In the first three counts, the victim was A.E. In the fourth count, the victim was another daughter of defendant, H.M., who was born on February 20, 2002. In the fifth count, the victim was one of defendant's sons, J.D., who was born on October 19, 2007.

¶ 10      On March 11, 2016, in the arraignment on the indictment, an assistant public defender, Jacob L. Rubin, appeared on defendant's behalf.

¶ 11      Repeatedly, throughout the proceedings below, defendant switched back and forth between representation by the public defender's office and self-representation. On October 13, 2016, the circuit court allowed defendant to proceed *pro se*. On December 8, 2016, he changed his mind about self-representation, and the court reappointed Rubin. On March 22, 2018, defendant returned to self-representation. On September 7, 2018, at defendant's request, the court reappointed the public defender's office. On July 23, 2020, defendant again chose to represent himself. On June 18, 2021, at defendant's request, the court reappointed Rubin to represent defendant in posttrial and sentencing proceedings. On repeated occasions, when defendant insisted on representing himself, the court warned him of the disadvantages of self-representation. The court pointed out that defendant would be going up against an experienced prosecutor and that defendant's possible unfamiliarity with the rules of evidence and criminal procedure might put him at a disadvantage. While representing himself, defendant repeatedly requested standby

counsel. Each time, the court responded that it was within the court's discretion whether to appoint standby counsel and that the court declined to do so.

¶ 12   On March 21, 2018, a grand jury returned a superseding indictment, which charged defendant with eight counts of predatory criminal sexual assault of a child. The victims in the first five counts were the same as before. The victim in the new counts, counts VI to VIII, was another of defendant's daughters, F.E. Count VII alleged that, between January 2012 and February 10, 2016, defendant committed the offense of predatory criminal sexual assault of a child "in that the defendant, a person 17 years of age or older, knowingly committed an act of sexual penetration with F[.]E[.] (DOB: 9-10-04)[,] who was under the age of 13 at the time of the offense, in that the defendant put his finger in the vagina of F[.]E[.]"

¶ 13   On May 26, 2021, defendant, *pro se*, waived a jury. He had resolved to represent himself in a bench trial.

¶ 14   On June 7, 2021, which was the first day of the bench trial, the circuit court granted a motion by the State to dismiss count V of the superseding indictment, the sole count regarding J.D. The State then called defendant's ex-wife, Tanya Carson, who testified substantially as follows. The nature of defendant's relationship with A.E. had begun making Carson feel uneasy. Carson thought of a way to secretly investigate. She downloaded onto her iPad a software program whereby the video camera in her iPad would be activated by motion. She then positioned the iPad in the bedroom that she shared with defendant. Later, she watched a recording that was made on February 9, 2016. In this iPad video—to which defendant made no objection when the prosecutor offered the video in evidence in the trial—defendant was nude on the bed, and he appeared to be performing oral sex on A.E. Rubin had filed a pretrial motion for the suppression of the video on the grounds that it was (1) illegal eavesdropping (see 720 ILCS 5/14-5 (West 2016)) and (2) an

- 4 -

unauthorized video recording (see *id.* § 26-4). The circuit court concluded that because the audio portion of the iPad video was merely "a series of unintelligible audible expressions" instead of an intelligible conversation, there was no violation of the Illinois eavesdropping statute. As for defendant's second theory of exclusion, the court was aware of no statute requiring the suppression of an unauthorized video recording as opposed to an audio recording. Therefore, the court denied the motion to suppress the iPad video. After viewing this iPad video at home, Carson took all the children to the Carrie Lynn Children's Center, in Rockford, Illinois, to be interviewed.

¶ 15 On June 8, 2021, the second day of the bench trial, the State called F.E. According to her testimony, defendant had used the part he "peed with," his hand, and his mouth to touch the part she "peed with." She further testified that, with his mouth and his private part, defendant had touched the part she used to "poo." Also, in a video interview that was admitted in evidence pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2018)), F.E. disclosed that while she was naked, defendant touched her private part, her chest, and her bottom with his hand. (It is unnecessary to recount the testimony of the other victims. Defendant does not challenge the sufficiency of the evidence to prove the counts other than count VII.)

¶ 16 During a recess on the second day of the bench trial, defendant complained that the prosecution had two attorneys on its side of the courtroom whereas he, defendant, had been denied the appointment of standby counsel. After explaining to defendant the difference between standby counsel and co-counsel, the circuit court asked defendant if he again was requesting standby counsel. He answered that he was doing so. The court responded:

"The fact of you making that request in the middle of trial has its own problems. Of course, the only one who has any familiarity with the case is Mr.

Rubin. I have no idea if Mr. Rubin is here or not. He, of course, would not have been preparing for trial because he's not counsel of record in the case. I don't know that you would accept any help from Mr. Rubin given the complaints that you've lodged about him—

[DEFENDANT]: Well—

THE COURT: —in the past. So—and then we're also in the midst of trial. There are witnesses who are waiting or are going to be here this afternoon or tomorrow to testify. And, I mean, it's a bench trial, it's not a jury trial; so we don't have a jury waiting. But for someone to get up to speed and to be able to answer your questions is what I feel is to be an unacceptable delay in the trial.

* * *

I mean, there are factors that I'm to consider: the nature and the gravity of the charge. That's obviously a factor in your favor. These are very serious charges, and if convicted of more than—of predatory criminal sexual assault of a child of more than one child is a mandatory natural life sentence, consecutive sentences even if it was just relating to one child. But the factual and legal complexity of the proceedings. Jury trials are more complex than presenting bench trials. You don't have to worry about jury instructions or coming up with non-IPI instructions.

This is, as the case is coming out, it's feeling pretty straightforward. I mean, it's sensitive and—given the nature of the allegations, but it's not particularly complex. And the abilities and experience of the defendant. I know you haven't been to trial before, but, like I said, you've filed many, many things on your own behalf and are a well-educated, intelligent person."

¶ 17        "[I]n considering everything relating to the case," including the repeated warnings defendant had received that self-representation was risky, the circuit court did not "feel that it [was] appropriate at this time, especially mid[-]trial[,] to appoint standby counsel." Therefore, the court again denied defendant's request for the appointment of standby counsel.

¶ 18        On June 10, 2021, the parties made their closing arguments. Both orally and in a written argument, defendant invoked federal laws on eavesdropping. He claimed that, by her own closing argument, the prosecutor had "verifie[d] the constitutional violations that [he] complained of; namely, 18 U.S.C 2510, 2511, 2515, 2518, 3502, and 3504, a review of which will confirm." Defendant argued that "the State [could not] claim to establish guilt beyond a reasonable doubt since, as written, federal law [was] controlling."

¶ 19        After closing arguments, the circuit court found defendant guilty on all tried counts of the superseding indictment.

¶ 20        Defendant requested the appointment of counsel to represent him in posttrial and sentencing proceedings. On June 18, 2021, the circuit court reappointed Rubin.

¶ 21        On August 30, 2021, at the beginning of a status hearing, defendant announced that he had an objection. He and the circuit court then had the following conversation:

"THE COURT: What is your objection?

THE DEFENDANT: Well, since my argument—for a mistrial, actually—but for the re-trial involves Mr. Rubin himself, it wouldn't be prudent for him to be on the case, as it'd be a conflict of interest.

THE COURT: Okay. Well, it's not a mistrial issue. But your motion for new trial—

THE DEFENDANT: Right.

THE COURT: —how does it involve Mr. Rubin?

THE DEFENDANT: Well, I contend that part of the problem with the original process was due to Mr. Rubin's misinterpretation of law and his, what I call, sabotage of the case, being that he contends that federal law doesn't apply to state courts, as you might remember me mentioning in trial.

THE COURT: Yeah.

THE DEFENDANT: So being that that's an issue that I have, it wouldn't make sense for him to argue against himself.

THE COURT: But since you got to argue all your motions on your own—I mean, I understand you argued your motions, I denied the motions and we proceeded to trial. And so, of course, it's gonna have to be included in there. If you want it included in there, even if Mr. Rubin doesn't necessarily believe that it's a valid basis, he's gonna include it in the motion."

¶ 22        On December 28, 2021, Rubin filed an amended motion for a new trial. Above his signature, Rubin listed claims of error. One such claim was "[t]hat the Court erred in not granting the defendant's request for standby counsel on June 8, 2021." Below his signature, Rubin listed defendant's *pro se* claims of error that Rubin had decided not to adopt.

¶ 23        On December 30, 2021, the circuit court held a hearing on the amended motion for a new trial. On January 14, 2022, the court denied this posttrial motion.

¶ 24        Rubin thereafter left the public defender's office, and a new assistant public defender was assigned to represent defendant in sentencing proceedings. On March 4, 2022, the circuit court held a sentencing hearing, in which the prosecutor pointed out that section 11-1.40(b)(1.2) of the Criminal Code of 2012 required the imposition of natural life imprisonment,

given that defendant was "18 years of age or older and there were three victims in this matter[,] all of whom were under the age of 13" (to quote the prosecutor). See 720 ILCS 5/11-1.40(b)(1.2) (West 2016). Defense counsel argued, however, that sentencing defendant to mandatory natural life imprisonment would violate the constitutional requirement to take into account defendant's rehabilitative potential. The court imposed natural life imprisonment, as statutory law required.

¶ 25 On March 9, 2022, defense counsel filed a motion for reconsideration of the sentence.

¶ 26 On April 15, 2022, the circuit court denied this postsentencing motion.

¶ 27 That same day, defendant filed a notice of appeal, in which he identified the order of April 15, 2022, as the judgment or order from which he appealed.

¶ 28 II. ANALYSIS

¶ 29 A. Whether the Evidence Was Sufficient to Prove the

Element of Sexual Penetration as Alleged in Count VII

¶ 30 Count VII of the superseding indictment alleged that, between January 2012 and February 10, 2016, defendant committed the offense of predatory criminal sexual assault of a child in that he "committed an act of sexual penetration with" F.E. by "put[ting] his finger in [her] vagina." During this four-year time span specified in count VII, section 11-0.1 of the Criminal Code of 2012 defined the term " '[s]exual penetration' " as follows:

> "any contact, however slight, between the sex organ or anus of one person and an
>
> object or the sex organ, mouth, or anus of another person, or any intrusion, however
>
> slight, of any part of the body of one person or of any animal or object into the sex
>
> organ or anus of another person, including, but not limited to, cunnilingus, fellatio,
>
> or anal penetration. Evidence of emission of semen is not required to prove sexual

penetration." 720 ILCS 5/11-0.1 (West 2012); 720 ILCS 5/11-0.1 (West 2014); 720 ILCS 5/11-0.1 (West 2016).

Thus, sexual penetration, as specially defined by section 11-0.1, means either (1) contact or (2) intrusion. Contact with the hand, however, is not sexual penetration. See *People v. Maggette*, 195 Ill. 2d 336, 350 (2001). But intrusion with the hand into the sex organ—no matter how slight the intrusion—is sexual penetration.

¶ 31        Count VII alleges sexual penetration by intrusion: defendant's "put[ting] his finger in [F.E.'s] vagina." The parties appear to agree that, to carry its burden of proof in count VII, the State had to prove an "intrusion, however slight," of defendant's hand "into the sex organ" of F.E. 720 ILCS 5/11-0.1 (West 2012); 720 ILCS 5/11-0.1 (West 2014); 720 ILCS 5/11-0.1 (West 2016). Defendant maintains that the State failed to carry this burden of proof.

¶ 32        As summed up by the State in its brief, the relevant evidence from the bench trial is as follows:

> "[T]he State asked [F.E.], 'And did [defendant] ever use his hand to touch your private part?' and F.E. replied, 'Yeah.' [Citation.] The State asked, 'So the private part that you go pee with, when your clothes were off, would he touch you?' and F.E. replied, 'Yeah.' [Citation.] The State asked, 'And then, when your clothes were off with that private part, what did he use to touch you with?' and F.E. replied, 'His hands or his private part.' [Citation.]"

According to defendant, this evidence failed to prove "any intrusion, however slight, of any part of" his body "into the sex organ" of F.E. 720 ILCS 5/11-0.1 (West 2012); 720 ILCS 5/11-0.1 (West 2014); 720 ILCS 5/11-0.1 (West 2016). The State disagrees. In the State's view, when the evidence is regarded in a light most favorable to the prosecution (see *Collins*, 106 Ill. 2d at 261), a rational

trier of fact could find, beyond a reasonable doubt, the element of sexual penetration. The State gives four reasons for its insistence that the evidence is sufficient.

¶ 33　　　　First, the State argues that, in *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 46, "the evidence of 'rubbing and pressing down' on the victim's labia majora was sufficient for a jury to conclude that [the] defendant had intruded into the victim's sex organ." The victim in *Gonzalez* additionally testified, however, that the defendant " 'rubbed *in* the thumbs and pushed *in*' her *vagina*." (Emphasis added.) *Id.* Because F.E. did not use such language of penetration, *Gonzalez* is distinguishable. Another case the State cites, *People v. Foster*, 2020 IL App (2d) 170683, is distinguishable for the same reason. Unlike the victim in *Foster*, F.E. never testified that defendant had "*poked* her a lot *in* the place from where she pees" (emphases added) (*id.* ¶ 35). Instead, F.E. testified that defendant had "touched" the "private part that [she went] pee with." Touching the private parts is not necessarily intruding into the private parts.

¶ 34　　　　Second, the State cites *People v. Raymond*, 404 Ill. App. 3d 1028, 1041 (2010), for the proposition that, despite the absence of direct evidence, a trier of fact can draw a reasonable inference of penetration. The reasonableness of such an inference, however, depends on the facts from which the inference is drawn. In *Raymond*, the facts were compelling. In response to a report of criminal trespass, police officers entered an abandoned house. *Id.* at 1033. They heard squeaking sounds coming from the second floor. *Id.* They went upstairs and entered a bedroom. *Id.* On a bed were defendant and an underage girl. *Id.* at 1033-34. The opinion in *Raymond* continues:

> "Officer [John] Tait then entered the bedroom, where he heard grunting
> noises coming from [the] defendant and the victim, and noticed that both were
> naked from the waist down. The victim was lying on her back, with her arms around
> [the] defendant's back and her legs '[s]pread wide open.' [The] [d]efendant was

lying on top of the victim's pelvic area, their hips were touching, and his legs were between hers. [The] [d]efendant's buttocks were 'moving up and down' in what Officer Tait described as a 'humping fashion.' Officer Tait testified that he observed them for a second or two and his first impression was '[t]hat they were having intercourse.' Officer Tait ordered [the] defendant to stand up, and when he did, Officer Tait noticed that [the] defendant's penis was wet and erect." *Id.* at 1034. Although Tait did not actually see penetration and although the victim did not testify to penetration, Tait observed facts from which penetration could be reasonably inferred. See *id.* at 1041. In the present case, we see no comparable facts in the State's summary of the evidence, quoted earlier. Instead, we see evidence of "[m]ere touching or rubbing of a victim's sex organ *** with a hand"— evidence that, the Fourth District has held, "does not prove sexual penetration." *People v. Maggette*, 311 Ill. App. 3d 388, 397 (2000). The supreme court has agreed with that holding. *Maggette*, 195 Ill. 2d at 352.

¶ 35        Third, the State cites *People v. Janusz*, 2020 IL App (2d) 190017, ¶ 72, in which the victim testified that the defendant had "touched her *inside* her vaginal area" (emphasis in original), and *People v. Hillier*, 392 Ill. App. 3d 66, 68 (2009), in which the victim testified that the defendant had touched her vagina. A touching of the vagina is necessarily a penetration of the female sex organ since the vagina is behind the labia and the hymen. F.E., however, never testified that defendant had touched her vagina or inside her vaginal area. Therefore, *Janusz* and *Hillier* are distinguishable.

¶ 36        Fourth, the State argues that, under "a precise reading of what F.E. testified to," defendant clearly "*did* intrude upon her sex organ." (Emphasis in original.) The State reasons that, "in order to arrive at the part she goes pee with, the urethral opening, defendant would need to go

through both labia[s] majora and minora"—an intrusion into the sex organ. To be precise, though, F.E. did not testify that defendant had touched her urethral opening. Nor did she so testify in so many words. Rather, she testified that he had touched "the private part that you go pee with." Proof that the defendant touched the victim's private parts, however, is not proof of sexual penetration. See *Maggette*, 195 Ill. 2d at 352; *Maggette*, 311 Ill. App. 3d at 397. In *People v. Hobbs*, 2022 IL App (4th) 210471-U, ¶ 22, for example, the victim testified that the defendant had "touched the part where [she went] pee." The Fourth District held that this testimony "failed to prove intrusion." *Id.* ¶ 21.

¶ 37        F.E.'s testimony that defendant had touched her "private part" was, as a matter of law, insufficient to prove the element of sexual penetration alleged in count VII. See *Maggette*, 195 Ill. 2d at 352; *Maggette*, 311 Ill. App. 3d at 397; *People v. Lofton*, 303 Ill. App. 3d 501, 507-08 (1999); *People v. Garrett*, 281 Ill. App. 3d 535, 545 (1996); *Hobbs*, 2022 IL App (4th) 210471-U, ¶ 21. Consequently, the conviction on count VII of the superseding indictment must be reversed.

¶ 38        B. The Denials of Defendant's Requests for the Appointment of Standby Counsel

¶ 39                1. *The Pretrial Requests*

¶ 40        Defendant contends that the circuit court erred by denying pretrial requests for standby counsel that he made on September 2, 2016, July 3, 2017, April 10, 2018, and October 18, 2019. The State responds that because defendant's amended posttrial motion raised only the denial of his mid-trial request for standby counsel, defendant has forfeited the issue of whether the court erred by denying his pretrial requests for standby counsel. "*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphases in original.) *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Regardless of whether the trial was a jury trial or a bench trial, an issue is preserved for review only if the issue was raised

- 13 -

both contemporaneously and in a posttrial motion. *People v. De le Hera*, 2011 IL App (3d) 100301, ¶ 7; *People v. Johnson*, 214 Ill. App. 3d 1087, 1089 (1991). In the amended motion for a new trial, defense counsel never claimed that denying all the requests for standby counsel was erroneous. Instead, he claimed "[t]hat the Court erred in not granting the defendant's request for standby counsel *on June 8, 2021*," which was the second day of the bench trial. (Emphasis added.) Defense counsel thereby signified to the court that its earlier, pretrial denials of defendant's requests for standby counsel were not of "any importance" and were not worth reevaluating. *Johnson*, 214 Ill. App. 3d at 1090. A defendant "must both specifically object at trial and raise the *specific* issue again in a posttrial motion to preserve an alleged error for review." (Emphasis added.) *People v. Woods*, 214 Ill. 2d 455, 470 (2005). In the amended posttrial motion, the specific issue raised was whether the circuit court erred by denying the request on June 8, 2021, for standby counsel, not whether the court erred by denying the previous requests for standby counsel. Therefore, the only request for standby counsel that was preserved for review was the one that defendant made mid-trial. See *Enoch*, 122 Ill. 2d at 186.

¶ 41 Defendant disagrees. For the following four reasons, he disputes the State's contention that he has procedurally forfeited his pretrial requests for standby counsel.

¶ 42 First, defendant observes that the State cites no authority for the asserted forfeiture (although we do so in the preceding paragraph). Defendant claims that this omission by the State is a violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which, by defendant's understanding, Illinois Supreme Court Rule 341(h)(i) (eff. Oct. 1, 2020) makes applicable to the appellee (in this case, the State). Defendant reasons that by failing to cite authorities, the State has forfeited its contention of forfeiture.

¶ 43     In evaluating this reasoning, we begin by noting that Rule 341(h) is titled "Appellant's Brief" and applies to the appellant's brief, as opposed to the appellee's brief. Ill. S. Ct. R. 341(h)(7) (Oct. 1, 2020). Rule 341(h)(7) (eff. Oct. 1, 2020) requires that the appellant's brief contain "[a]rgument, *** with citation of the authorities *** relied on," and goes on to provide, "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Again, that language, with its forfeiture provision, pertains to the appellant's brief. However, Rule 341(i), which is titled "Briefs of Appellee and Other Parties," provides that "[t]he brief for the appellee *** shall conform to the *** *requirements*" in Rule 341(h)(7). (Emphasis added.) Ill. S. Ct. R. 341(i) (Oct. 1, 2020). Thus, only the requirements in Rule 341(h)(7) are incorporated into Rule 341(i)—"requirements" meaning, in this context, what is demanded of the parties. Making an argument accompanied by citation to authorities is required of the parties. But the forfeiture language in Rule 341(h)(7) is not a requirement of the parties—it is not something the parties must do in writing their briefs. It follows, then, that the appellee must make arguments and support the arguments with citations to relevant authorities. For the appellee, though, forfeiture is not the prescribed consequence of noncompliance with that requirement.

¶ 44     This interpretation of Rule 341(h)(7) and (i) harmonizes with a long-standing principle of case law: we may affirm the judgment for any reason substantiated by the record, regardless of whether the appellee raises that reason. See *People v. Reed*, 361 Ill. App. 3d 995, 1000 (2005). In fact, because the appellant has the burden of establishing reversible error, we may affirm the judgment below even if the appellee files no brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Filing a brief that, on some point, neglects to cite authorities cannot logically put the appellee in a worse position than if the appellee had filed no brief at all.

¶ 45          Second, defendant claims that his amended posttrial motion actually did raise the denials of his pretrial requests for standby counsel. Paragraph 22 of the amended posttrial motion claimed that "the Court erred in denying the defendant's motion for mistrial filed June 17, 2021." Paragraph 18 of this *pro se* motion for a mistrial in turn claimed that "[t]he orders of the court denied the accused the effective assistance of counsel and forced the accused to proceed *pro se* *** even given the accused['s] lack of training, funds[,] and resources."

¶ 46          Let us assume, for the sake of argument, that paragraph 18 of the *pro se* motion for a mistrial clearly raised the pretrial refusals to appoint standby counsel. Even so, paragraph 22 of the amended posttrial motion is an attempt at hybrid representation and, as such, is ineffectual. Paragraph 22 is in the portion of the amended posttrial motion devoted to defendant's *pro se* claims—claims that defense counsel declined to adopt. Case law forbids a circuit court to permit hybrid representation. See *People v. Niffen*, 2018 IL App (4th) 150881, ¶ 19 (instructing circuit courts to reject attempts at hybrid representation). If a defendant represented by counsel files a *pro se* motion, the *pro se* motion is to be stricken unless it triggers a *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) by criticizing defense counsel's performance. *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 18. Paragraph 22 is not a claim of ineffective assistance. Thus, it is to be disregarded as an attempt at hybrid representation. See *id.*

¶ 47          Third, quoting *People v. Crawford*, 343 Ill. App. 3d 1050, 1055-56 (2003), defendant argues that "[c]ourts have relaxed the forfeiture doctrine 'when the trial judge's conduct would have been the basis of the objection.' " According to the supreme court, however, relaxation of the forfeiture doctrine on the basis of the trial judge's conduct is to be reserved for "extraordinary" cases. *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009). Specifically, "excusing forfeiture based on the trial judge's conduct is warranted when the trial court has overstepped its

authority in the presence of the jury or when counsel is effectively prevented from objecting as any objection would have fallen on deaf ears." (Internal quotation marks omitted.) *People v. Johnson*, 238 Ill. 2d 478, 490 (2010). There was no jury in this case. As for the remaining part of the *Johnson* test, an argument would fall on deaf ears only if the argument were ignored or only if the tribunal refused to hear the argument. Just because, in view of the court's previous rulings, an argument might be thought to have little likelihood of success, it does not follow that the court would be deaf to the argument. Being unconvinced by an argument does not mean being deaf to it. The record affords no basis for supposing that the court would have ignored a posttrial argument that its pretrial refusals to appoint standby counsel were erroneous. Nothing in the court's words or conduct "effectively prevented" defendant from raising this issue in a posttrial motion. *Id.*

¶ 48     Fourth, defendant argues that the denial of his requests for the appointment of standby counsel was structural error within the meaning of the plain-error rule, error that threatens to throw the judicial system into disrepute. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). This argument is inconsistent with the statement in *People v. Hood*, 2022 IL App (4th) 200260, ¶ 84, that "[a] *pro se* defendant does not have a right to standby counsel." See also *People v. Gibson*, 136 Ill. 2d 362, 383 (1990) (stating that "the right of self-representation does not carry with it a corresponding right to the assistance of a legal adviser"); *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 42 (holding that "[a] *pro se* defendant does not have a right to standby counsel").

¶ 49     Therefore, we give effect to the procedural forfeiture of the issue of whether the circuit court erred by denying defendant's pretrial requests for standby counsel.

¶ 50                              2. *The Mid-Trial Request*

¶ 51 Defendant claims the circuit court erred by declining a request he made on the second day of the bench trial for the appointment of standby counsel. Because this claim is preserved by the amended posttrial motion, we address the merits of this claim.

¶ 52 We review for an abuse of discretion a circuit court's refusal to appoint standby counsel. *Hood*, 2022 IL App (4th) 200260, ¶ 86. By looking for an abuse of discretion, we apply the most deferential standard of review recognized by the law. See *In re D.T.*, 212 Ill. 2d 347, 356 (2004). "An abuse of discretion will be found only when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Hood*, 2022 IL App (4th) 200260, ¶ 86.

¶ 53 Defendant maintains that by refusing to appoint standby counsel, the circuit court abused its discretion because the three factors in *Gibson*, 136 Ill. 2d at 380, militated in favor of such an appointment. The supreme court held in *Gibson*, "Relevant criteria appropriately considered by a trial court in deciding whether to appoint standby counsel to assist a *pro se* defendant in a criminal case include [(1)] the nature and gravity of the charge, [(2)] the expected factual and legal complexity of the proceedings, and [(3)] the abilities and experience of the defendant." *Id.* Defendant challenges the circuit court's evaluation of the second and third of those factors. The case was, in defendant's view, legally and factually complex. Also, as he told the court, he knew nothing about criminal procedure other than what he had seen on television.

¶ 54 Even assuming, however, that all three factors in *Gibson* tended to favor the appointment of standby counsel, nothing in *Gibson* suggests that those three factors are exclusive or that they are, in every case, determinative. See *Hood*, 2022 IL App (4th) 200260, ¶ 97 (pointing out that *Gibson* was a capital case and that "[a] court deciding whether to appoint standby counsel, and therefore weighing the *Gibson* factors, should be aware of *Gibson*'s unique facts, which,"

because "the death penalty is no longer available in Illinois," "are now incapable of repetition"). Rather, *Gibson* says it would be "appropriate[ ]" if, in deciding whether to appoint standby counsel, the factors the circuit court considered "*include*[*d*]" those three. (Emphasis added.) *Gibson*, 136 Ill. 2d at 380. "Include" signifies "a partial list." (Internal quotation marks omitted.) *People v. Perry*, 224 Ill. 2d 312, 330 (2007). The supreme court's choice of the word "include" implies it might be appropriate to consider additional factors as well, not just the three factors the supreme court listed.

¶ 55        Another factor, in addition to those in *Gibson*, might be whether, in the circumstances of the case, the appointment of standby counsel would likely "create[ ] more problems than it [would] solve[ ]." (Internal quotation marks omitted.) *Hood*, 2022 IL App (4th) 200260, ¶ 88. One potential problem, which the circuit court "should consider," is the prospect of further spurious claims of ineffective assistance—claims that were headed off by the defendant's discharge of appointed counsel. *Id.* ¶ 93. The appointment of standby counsel could put the court in the position of being a "referee" of more "disagreements" between the defendant and counsel, disagreements that would be difficult to resolve because they would involve off-the-record conversations between the defendant and standby counsel in the heat of the trial. *Id.* ¶ 92. The defendant could claim that "standby counsel gave deficient legal advice upon which the defendant relied in developing his trial strategy." *Id.* This risk would seem especially acute if the defendant had discharged appointed counsel in the first place, and had chosen to proceed *pro se*, because the defendant had disagreed with counsel on questions of strategy or law. By reinstalling the maligned attorney—this time as standby counsel—the court could be asking for trouble.

¶ 56        To put it differently, a circuit court could reasonably deny a defendant's request for standby counsel because the request "contradict[s] his prior representations regarding the very

same public defender whom he just discharged." *People v. Hui*, 2022 IL App (2d) 190846, ¶ 62. In *Hui*, for example, the defendant moved to discharge the public defender and to represent himself because he and the public defender disagreed on trial strategy (*id.* ¶ 9) and because the public defender was, in the defendant's opinion, still inadequately prepared for trial after a two-month opportunity for preparation (*id.* ¶ 58). And "[y]et," the appellate court observed in *Hui*, the "defendant now argues that the trial court erred [by] failing to appoint[,] [as standby counsel,] the same attorney who was 'ill[-]prepared' for trial and whose strategy [the defendant] did not wish to follow." *Id.* ¶ 62. The appellate court stated, "Given [the] defendant's stated displeasure with counsel's preparation and trial strategy, we fail to see how the trial court abused its discretion [by] failing to appoint the public defender as standby counsel. We find no error in the trial court's refusal to appoint standby counsel." *Id.* ¶ 63.

¶ 57          We are aware of no authority bestowing upon a defendant the right to have, as standby counsel, an attorney other than the one hitherto appointed to be trial counsel. "[A] criminal defendant has no right to choose his or her own court-appointed counsel or insist on representation by a particular public defender." *People v. Abernathy*, 399 Ill. App. 3d 420, 426 (2010). Still less would a defendant have the right to choose his or her own standby counsel. See *Hood*, 2022 IL App (4th) 200260, ¶ 84 (holding that "[a] *pro se* defendant does not have a right to standby counsel"). Requiring a different attorney to duplicate hours of labor in becoming familiar with the case would be, arguably, a waste of time and resources. A circuit court could fairly decide that if there is to be standby counsel, that person will be the attorney who already is knowledgeable about the case. The court also could fairly decide that if the defendant has declared a lack of confidence in the appointed counsel whom he has discharged, there should be no standby counsel, because

appointing the discharged counsel to advise the defendant during the trial would only lead to further disputes between the defendant and counsel over strategy and legal questions. See *id.*

¶ 58        Arguably, the relationship between defendant and the Winnebago County Public Defender's Office did not bode well for an appointment of standby counsel. On July 13, 2017, defendant filed, *pro se*, an affidavit accusing Rubin of rendering ineffective assistance by "refus[ing] to 'adopt' and present a motion for dismissal of all charges based on various violations of [the Illinois] eavesdropping statute." In hearings on July 20 and August 22, 2017, the circuit court questioned defendant and Rubin about this affidavit. Rubin explained to the court that he was well aware of defendant's proposed motion for dismissal and that Rubin declined to adopt it because, in his view, it lacked merit. Apparently, defendant was unwilling to be guided by this legal advice from Rubin.

¶ 59        It appears the attorney-client relationship continued to deteriorate. On December 5, 2017, defendant filed another *pro se* claim of ineffective assistance. This claim took the form of a motion to "replace [the] public defender, Jacob Rub[i]n[,] and his office with independent counsel." The motion accused Rubin of "engag[ing] in professional misconduct" by "allowing inadmissible discovery material" and by "allow[ing] the State's Attorney to continue prosecution in violation of Illinois statute, U.S. and Illinois Constitutions, equal protection of law[,] and *** due process." The motion even went so far as to suggest that this allegedly deficient performance "may involve conspiracy, dishonesty[,] and fraud." The motion complained that Rubin's "ignorance of Illinois statutes" and his "fail[ure] to be diligent" had "undermined any confidence" that defendant and his "family" "may have had otherwise in the trustworthiness of Mr. Rub[i]n and his office." In view of these harsh criticisms, the circuit court might have foreseen that appointing standby counsel would serve little purpose. After all, defendant responded with an

ambivalent, "Well," to the court's question of whether he would want Rubin as standby counsel. Defendant was so distrustful of the public defender's office that he likely would have been unreceptive to legal advice from standby counsel—or so the court could have reasonably forecasted.

¶ 60　　　　The Fourth District has observed that "*no* trial court in Illinois has been reversed for exercising its discretion to *not* appoint standby counsel." (Emphases in original and internal quotation marks omitted.) *Hood*, 2022 IL App (4th) 200260, ¶ 86. For the reasons we have explained, the present case is a poor candidate to break this trend. We find no abuse of discretion in the denial of defendant's mid-trial request for the appointment of standby counsel.

¶ 61　　　　　　　　　　　C. A *Krankel* Inquiry

¶ 62　　　　According to defendant, "[n]o post-trial inquiry was held" into his *pro se* claim that Rubin had rendered ineffective assistance. The record shows otherwise. On August 31, 2021, in the posttrial status hearing, Rubin appeared on behalf of defendant (given that defendant had requested the reappointment of counsel for posttrial proceedings). At the beginning of the hearing, defendant said he had an objection. The circuit court asked him what his objection was. Defendant answered that because his own argument in favor of a new trial "involve[d] Mr. Rubin himself," Rubin was in "a conflict of interest." The court asked defendant, "But *** how does [your motion for a new trial] involve Mr. Rubin?" That question, it should be noted, was an inquiry into defendant's *pro se* allegation of ineffective assistance. Defendant's assertion, therefore, that "[n]o post-trial inquiry was held" is false.

¶ 63　　　　In response to the circuit court's inquiry, defendant explained, "Well, I contend that part of the problem with the original process was due to Mr. Rubin's misinterpretation of law and his, what I call, sabotage of the case, being that he contends that federal law doesn't apply to state

courts, *as you might remember me mentioning in trial*." (Emphasis added.) Thus, in explaining his *pro se* claim of ineffective assistance, defendant alluded to an earlier discussion. The court responded, "Yeah," signifying that it remembered the earlier discussion. So, contrary to defendant's suggestion, the court did not ignore defendant's *pro se* posttrial claim of ineffective assistance. Rather, the court "examine[d] the factual basis of the defendant's claim," as case law required the court to do. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). The court asked defendant what Rubin had done wrong to merit the granting of a new trial, and defendant gave an answer— an answer that was sufficiently informative in the context of the record as a whole.

¶ 64        As the State notes, "[a] brief discussion between the trial court and the defendant may be sufficient." *Id.* at 78. The brief discussion was sufficient in this case. Defendant referenced earlier, more extensive arguments he already had made. On appeal, defendant does not suggest, let alone explain, how his *pro se* claim of ineffective assistance "ha[s] potential merit." (Internal quotation marks omitted.) *People v. Finley*, 222 Ill. App. 3d 571, 584 (1991). Consequently, in our *de novo* review, we find compliance with *Krankel*. See *People v. Jackson*, 2020 IL 124112, ¶ 98.

¶ 65                        III. CONCLUSION

¶ 66        For the foregoing reasons, we reverse the conviction and sentence on count VII of the superseding indictment, but we otherwise affirm the circuit court's judgment.

¶ 67        Affirmed in part and reversed in part.