2025 IL App (2d) 240585
No. 2-24-0585
Opinion filed August 19, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-118 |
| CARL FRANCIK, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Birkett and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1     After a bench trial, defendant, Carl Francik, was convicted of eavesdropping (720 ILCS 5/14-2(a)(1) (West 2020)) and sentenced to 30 months' probation. On appeal, he argues that (1) he was not proved guilty beyond a reasonable doubt because (a) the recording at issue was unintelligible and (b) there was no evidence that he knowingly and intentionally utilized the eavesdropping device in question and (2) his trial counsel was ineffective for failing to perfect the impeachment of the complaining witness. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     The State charged defendant with a single count of eavesdropping, alleging that, on or about October 21, 2022, defendant

"knowingly and intentionally used an eavesdropping device in a surreptitious manner for the purpose of overhearing, transmitting, or recording all or part of any private conversation to which he was not a party without the consent of all of the parties to the private conversation; in that he recorded a private conversation between Jaime Thomas and another person."

¶ 4 At trial, Thomas testified for the State as follows. Defendant is her former husband, and they were divorced at the time of the alleged incident. On October 21, 2022, their child, E.F., was one year old. That day, at 6:30 a.m., Thomas drove to defendant's home and picked up E.F., per a joint parenting agreement. Thomas and E.F. spent the morning at home. They had some conversations and talked by phone with Thomas's mother.

¶ 5 Thomas testified that, after spending four or five hours inside, she decided to take E.F. out for a walk. To prepare for the walk, she retrieved the coat E.F. had worn when she picked him up from defendant. The coat belonged to defendant. Noticing that one side of the coat was heavier than the other, Thomas looked into the right pocket and saw a small rectangular object with masking tape on it (the device). She did not know what the device was and had never seen it in E.F.'s coat before. She put the device on her porch.

¶ 6 Thomas testified that she then texted defendant about the device. He texted back that E.F. must have taken it off the kitchen counter and put it into his pocket. Thomas testified that she had been in defendant's residence and that his kitchen counter was "slightly higher" than the barstools at the kitchen island.

¶ 7 Thomas testified that she later took the device to her employer, Alexsandra Sang. They had the device examined by Keith Smith. The trial court admitted the device into evidence.

¶ 8    Thomas testified that, when the device was examined, it was found to contain an audio recording of conversations inside her home on October 21, 2022. Thomas identified a compact disc that contained the recording, which was about five hours long. In preparation for trial, Thomas's counsel prepared several excerpts from the recording. Thomas listened to the excerpts before trial, and she confirmed that the excerpts were "fair and accurate representations of what was recorded on October 21st, of 2022."

¶ 9    Four of the excerpts were played in court. Thomas testified that excerpt 1 (30 seconds) was her conversation with E.F. while driving back from the parenting exchange; excerpt 2 (one minute) was their conversation over breakfast, during which E.F. pointed to breakfast items and Thomas gave their names; excerpt 3 (two minutes) was their conversation about cleaning the house; and excerpt 4 (five minutes) was Thomas's conversation with her mother on speaker phone. Thomas did not consent to the recording and was unaware of the recording when it was being made.

¶ 10    Thomas's counsel admitted that excerpt 1 was "muffled" and "very quiet" and that excerpt 2 was "really hard to hear." Regarding excerpt 1, the trial court commented, "I could not recognize anything being said." Regarding excerpt 2, the court said, "I can hear some noise." When counsel increased the volume, the court said, "That's better."

¶ 11    Thomas testified that, between the incident and "the time that [she] submitted the device," defendant made several comments about the device. By text, he asked for the device back and said it belonged to the school where he taught. In person, he told Thomas that she was a "sociopath" for not returning the device. Another time, he told her to "f*** off." Although Thomas believed defendant had committed a crime when he used the device to record her, she did not immediately turn the device over to law enforcement, because she was "concerned that if it wasn't what [she] thought it was, *** it would just make more problems in [the] co-parenting relationship."

¶ 12 On cross-examination, Thomas testified that she "first turn[ed] the device over to somebody to investigate it" in December 2022. When defendant demanded that Thomas return it, she lied and told him that she did not know where it was.

¶ 13 Thomas testified that, when she spoke to Detective Krupp (first name not given in the record), Sang accompanied her. She was aware that the interview was being recorded. Defense counsel then asked Thomas how long she sat in the interview room before Krupp entered. The State objected that the inquiry was irrelevant. Counsel explained:

"Well, what was turned over to us was just a recording that starts when Detective Krupp walks into the room, but you can tell from the interview that her and Dr. Sang were talking about this case on the tape and camera prior to where the start of that video is turned over."

Counsel argued that the inquiry went to Thomas's credibility. The trial court agreed and overruled the State's objection. Thomas then testified that she could not recall how long she sat in the interview room before Krupp entered.

¶ 14 Defense counsel then asked Thomas, "What is the issue between the two of you with the Parenting Agreement?" The State objected on relevance grounds. Counsel responded, "It goes to motive to be untruthful about some of this testimony." He added, "She could be lying about this entire situation to try to affect a Parenting Agreement that she's unhappy about." The trial court overruled the State's objection. The cross-examination continued:

"Q. Well, earlier, when I asked you why you hadn't gone to law enforcement, you said that if you were wrong, you didn't want to exacerbate problems with the Parenting Agreement.

A. I believe I said problems within our co-parenting relationship, not Parenting Plan.

Q. *** [S]o you're fine with the Parenting Plan as it is. You don't want it to change at all?"

¶ 15 The trial court interjected that it could not see the relevance of whether Thomas wanted to change the parenting agreement. Defense counsel responded that the inquiry went to whether the alleged eavesdropping was "concocted by Miss Thomas in order to *** undue [*sic*] the Marital Settlement Agreement [with defendant]." The court "overrule[d] the objection at this time," but told counsel, "I need you to give me some foundation about when these things occurred so that there can be some context."

¶ 16 Counsel then questioned Thomas about the settlement agreement in the judgment dissolving her marriage. He asked Thomas whether, in her interview with Krupp, she complained about the custody arrangement. The State objected on hearsay grounds, but the trial court allowed the questioning for impeachment. Thomas responded, "I'm going to say no, I don't believe Detective Krupp was in the room when I said that." Counsel followed up: "So it's your testimony that you didn't complain about that to Detective Krupp?" Thomas answered no.

¶ 17 Smith, a former sheriff's deputy, testified that, in December 2022, he met with Thomas at Sang's request. Smith was a contract worker for Kane County Court Services. Thomas showed him the device, which, through online searches, he identified as a recorder. Smith plugged the device into his "forensic work station" and found several audio files stored on the device. Smith saved the files.

¶ 18 The State rested.

¶ 19 Defense counsel called Krupp. The State objected that Krupp was called to impeach Thomas, but that "the impeachment was not set up properly, so there is no impeachment at this time to perfect." The State explained that Thomas was never confronted with any direct statement

she allegedly made to Krupp and then asked whether she made the statement. The trial court agreed with the State and barred defendant from calling Krupp. Defendant rested.

¶ 20 The trial court found defendant guilty. In its written opinion, after summarizing the evidence, the court stated, "I, after the close of the evidence, retrieved the recordings from evidence and played them multiple times ***." The court continued:

"I determined the recording to be of conversations. I could determine an adult voice and a child's voice speaking. I could only understand a few words now and then. I could not determine what the voices were saying.

I was also able to determine from the recording, two adult voices conversing.

Again, I could only hear a few words. I could determine it was two people, both adults conversing."

¶ 21 The court then noted, however, that it "could find no law to hold that the recorded conversations needed to be intelligible to the fact finder to be violative of the statute." The court continued: "I find the testimony of Jaime Thomas to be credible. Her testimony was corroborated by the recordings themselves as well as the verbal reactions of *** [d]efendant as testified to by Thomas."

¶ 22 Defendant, represented by new counsel, filed a posttrial motion. Defendant's first contention was that the eavesdropping statute criminalizes only intelligible recordings of private conversations and that, since the recording here was unintelligible, defendant was not criminally liable. Further, defendant argued that the State was judicially estopped from arguing that a recording need not be intelligible to establish illegal eavesdropping, because, in *People v. Massenburg*, 2023 IL App (4th) 220324-U, ¶ 14, the State argued in the trial court (but not on appeal, since the defendant did appeal on the eavesdropping issue) that intelligibility was required.

Defendant's second contention was that his trial counsel was ineffective for failing to perfect the impeachment of Thomas.

¶ 23    The trial court denied the motion. On the first issue, the court disagreed with defendant's statutory interpretation, reasoning:

"The statute's intent is to make illegal secret recordings made by one person of another's statements.

Merely because this [c]ourt, with limited technology available[,] could not determine what was actually being said in these recorded conversations does not mean the conversations did not exist.

Better technology, better hearing or more familiarity of voices may have rendered the actual words understandable.

The crux of the statute is the secret recording of private conversations, not the ability to hear or understand the conversation."

The court also determined that judicial estoppel did not apply.

¶ 24    On the ineffectiveness issue, the trial court said:

"It was obvious to this trier of fact [that] *** [d]efendant and the primary witness were not on good terms. This trier of fact did understand the victim of the offense was interested in damaging, in some way, *** [d]efendant.

A perfection of said impeachment would not have changed my verdict.

The recording and *** [d]efendant's admission that the recording device belonged to him was sufficient proof."

¶ 25    The trial court sentenced defendant to 30 months' probation. He timely appealed.

¶ 26                    II. ANALYSIS

¶ 27    On appeal, defendant purports to raise three discrete arguments, but in fact the first two challenge the sufficiency of the evidence to convict. Defendant's second main argument is that his trial counsel was ineffective for failing to perfect the impeachment of Thomas with Krupp's testimony.

¶ 28                    A. Sufficiency of the Evidence

¶ 29    Defendant argues first that, because the recorded conversations were unintelligible, he could not have violated the eavesdropping statute. Defendant asserts that general principles of statutory construction support his reading of the statute.

¶ 30    As pertinent here, the statute reads:

> "(a) A person commits eavesdropping when he or she knowingly and intentionally:
>
> (1) Uses an eavesdropping device, in a surreptitious manner, for the purpose of overhearing, transmitting, or recording all or any part of any private conversation to which he or she is not a party unless he or she does so with the consent of all of the parties to the private conversation[.]" 720 ILCS 5/14-2(a)(1) (West 2020).

¶ 31    First, we address the trial court's factual finding that the recording is, overall, unintelligible. The parties disagree on whether a deferential standard of review applies to that finding when the trial court was not in a superior position to make factual findings based on the recording. See, *e.g.*, *People v. Morgan*, 2025 IL 130626, ¶ 21 (requiring deference to factual findings based on live testimony). Under either standard of review, we cannot accept the trial court's assessment of the recording. In the excerpts played in court, Thomas is conversing (1) in person with E.F. and (2) over speaker phone with Thomas's mother. Entire statements—not just isolated words—by

Thomas are clearly discernible in the excerpts. Therefore, because portions of the recording are intelligible, defendant's argument based on statutory interpretation is no bar to his conviction.

¶ 32    However, because not all (indeed, perhaps not even most) of the recording is intelligible, we address whether—and to what extent—a recording must be intelligible to sustain a conviction of eavesdropping. We agree with the State that the quality of a recording is legally irrelevant to guilt under the statute.

¶ 33    Defendant's argument turns on statutory construction, a matter we review *de novo*. *People v. Howard*, 228 Ill. 2d 428, 432 (2008). Our primary goal is to give effect to the legislature's intent. *People v. Lee*, 397 Ill. App. 3d 1067, 1069 (2010). This intent is most reliably ascertained from the statutory language itself when given its plain and ordinary meaning. *People v. Clark*, 2019 IL 122891, ¶ 20. If the language is unambiguous, it must be given effect without resort to further aids of construction. *People v. McCarty*, 223 Ill. 2d 109, 124 (2006). We may not depart from the statute's plain meaning by reading into it exceptions, limitations, or conditions that the legislature did not express. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997).

¶ 34    As pertinent here, the eavesdropping statute is unambiguous. It requires only the knowing and intentional use of an eavesdropping device in a surreptitious manner "*for the purpose of* overhearing, transmitting, or *recording* all or any part of any private conversation." (Emphasis added.) 720 ILCS 5/14-2(a)(1) (West 2020). It does not require that the foregoing conduct produce a given result. The effort, not the result, is all that needs to be proved. Defendant invites us to amend the statute by adding a condition that the legislature did not express, in effect creating a new element of the offense. We must decline the invitation.

¶ 35    Defendant argues that allowing a person to be convicted of eavesdropping, even when his recording fails to capture little or none of a private conversation, does not serve the statute's

purpose of protecting people's privacy. Whatever the merits of this reasoning, it cannot overcome the plain statutory language. Moreover, the legislature can reasonably criminalize the *attempt* to invade another's privacy, just as it has criminalized the *attempt* to commit a criminal offense. See 720 ILCS 5/8-4 (West 2020). The legislature could rationally conclude that requiring that the recording be "intelligible" would create needless confusion over what that requirement would entail. For instance, how much "intelligibility" would the State have to prove? Would proof that a recording is intelligible depend on the defendant's hearing or the available technology? The legislature avoided these potential minefields by clearly excluding the need for intelligibility.

¶ 36    Defendant also cites foreign cases interpreting those states' eavesdropping statutes. *E.g.*, *Commonwealth v. Hyde*, 750 N.E.2d 963, 971 n.11 (Mass. 2001) (insinuating that state eavesdropping statute would not cover inaudible recordings). Those cases do not bind us (see *Walker v. Shults Auto Sales, Inc.*, 2025 IL App (2d) 240459, ¶ 56), nor does defendant attempt to cast them as persuasive by developing an argument relying on linguistic parallels between those statutes and our state's eavesdropping statute. Therefore, we decline to consider these authorities.

¶ 37    Aside from arguing the merits, defendant cites *Massenburg*, 2023 IL App (4th) 220324-U, ¶ 14, and infers from the background facts of that case that the State argued in the trial court that the eavesdropping statute requires an intelligible recording. Therefore, defendant concludes, the State is judicially estopped from contending here that intelligibility is not required. Defendant overlooks that judicial estoppel bars inconsistent factual assertions, not inconsistent legal positions. See *People v. Jones*, 223 Ill. 2d 569, 598 (2006); *People v. Wakenight*, 374 Ill. App. 3d 1089, 1094 (2007).

¶ 38    Defendant's second challenge to the sufficiency of the evidence is that the State did not prove that he knowingly and intentionally utilized the device to eavesdrop.

¶ 39    We note first that the State asks us to find this argument forfeited for lack of development because, aside from black-letter law, it consists of just these two paragraphs:

> "In this case, there was no substantial proof that [defendant] planted the 'eavesdropping device' in E.F.'s coat. Thomas did not see [defendant] place the object in the coat. The object was not linked to [defendant] by DNA or fingerprints. It was possible that E.F. had placed the object in the coat by himself.
>
> Moreover, no technical evidence was introduced to show how the object worked, how it operated, or how it could be started or stopped to record conversations."

¶ 40    This argument is concise, not conclusory, and undeveloped. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (proper argument consists of the party's contentions with supporting reasons). Defendant provided citations to legal authority. While he did not cite the record in the foregoing paragraphs, such citations were unnecessary to support his claims of the *absence* of evidence. We proceed to the merits of the argument.

¶ 41    "In reviewing the sufficiency of the evidence in a criminal case, our inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Baskerville*, 2012 IL 111056, ¶ 31. "The reviewing court should not substitute its judgment for that of the trier of fact, who is responsible for weighing the evidence, assessing the credibility of the witnesses, resolving conflicts in the evidence, and drawing reasonable inferences and conclusions from the evidence." *People v. Torruella*, 2015 IL App (2d) 141001, ¶ 39. A conviction may be based on circumstantial evidence. *People v. Brown*, 2013 IL 114196, ¶ 49. "A defendant's conviction will not be overturned unless the evidence is so unreasonable, improbable, or

unsatisfactory that there remains a reasonable doubt of the defendant's guilt." *People v. Gutierrez*, 2024 IL App (2d) 230260, ¶ 46.

¶ 42    Here, the trial court found that defendant placed the device into E.F.'s coat pocket. Thomas testified that defendant told her that E.F. must have taken the device off the kitchen counter, but Thomas also testified that the counter was "slightly higher" than the barstools next to the kitchen island. The trial court properly inferred that the one-year-old child could not have grabbed the device. Moreover, since the device recorded sounds while it was in Thomas's home, someone must have activated it before it ended up in E.F.'s coat (contrary to defendant's suggestion, no "technical evidence" was needed to establish this common-sense point). Defendant's motivations were easily inferable from his and Thomas's inharmonious relationship. His reaction to learning that she found the device was consistent with guilty knowledge. Thus, the trial court could infer that the device was not in E.F.'s coat pocket through his curiosity or defendant's inadvertence but, rather, that defendant deliberately placed it there to perform the purpose for which it was manufactured. The evidence proved defendant guilty beyond a reasonable doubt.

¶ 43                                B. Ineffective Assistance

¶ 44    Defendant's second claim of error is that his trial counsel was ineffective for failing to perfect the impeachment of Thomas with Krupp's testimony. He argues that the testimony could have affected the result of the trial by suggesting that Thomas had a motive to testify falsely to improve her custody situation. We disagree.

¶ 45    To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance was objectively unreasonable (performance prong) and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different (prejudice prong). *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *People*

*v. Coleman*, 183 Ill. 2d 366, 397 (1998). We may resolve a claim of ineffective assistance by finding that the defendant has failed to show prejudice. *Coleman*, 183 Ill. 2d at 397-98.

¶ 46     Here, the record plainly refutes defendant's claim of prejudice. In denying defendant's posttrial motion, the trial court noted that, in finding defendant guilty, it had recognized that Thomas "was interested in damaging [defendant], in some way." The court stated directly, "A perfection of said impeachment would not have changed my verdict." Indeed, any reasonable fact finder would have regarded the impeachment of Thomas as cumulative of admitted evidence of animosity between her and defendant. See *Strickland*, 466 U.S. at 695 ("The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker ***."). Defendant's ineffectiveness claim fails.

¶ 47                                III. CONCLUSION

¶ 48     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 49     Affirmed.

*People v. Francik*, **2025 IL App (2d) 240585**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 23-CF-118; the Hon. John A. Barsanti, Judge, presiding. |
| **Attorneys for Appellant:** | Stephen L. Richards, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Pamela S. Wells, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |